# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LAUREN KIKUCHI, ON BEHALF OF HERSELF AND ALL OTHER SIMILARLY SITUATED INDIVIDUALS, | CIVIL ACTION |
| VERSUS | NO: 20-CV-2764 |
| SILVER BOURBON, INC. D/B/A SCORES GENTLEMEN'S CLUB | SECTION: "H" |

## ORDER AND REASONS

Before the Court is Defendant's Motion to Dismiss (Doc. 12). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff Lauren Kikuchi filed this proposed class and collective action against her former employer, Defendant Silver Bourbon Inc. d/b/a Scores Gentlemen's Club ("Silver Bourbon"), for whom she worked as an exotic dancer from 2017 to 2020. Plaintiff alleges that, during the relevant time, she and her co-workers were misclassified as independent contractors. Plaintiff brings this action for damages arising from Defendant's alleged violations of the Fair Labor Standards Act[1] ("FLSA") and the Louisiana Wage Payment Act

---

[1] 29 U.S.C. § 201, *et seq.*

1

("LWPA").[2]

Now before the Court is Defendant Silver Bourbon's Motion to Dismiss Pursuant to Rule 12(b)(3). In the Motion, Defendant asserts that Plaintiff entered into a valid agreement to arbitrate her claims when she signed a document titled "Negotiated Independent Entertainer/Dancer Contract" (hereinafter, "the Contract").[3] The relevant language of the Contract states:

> It is agreed between the Dancer/Independent Contractor and N'Awlins Entertainment Group that should any dispute arise in connection with this contract and/or their working at any of the subject clubs that said dispute shall be resolved by arbitration only. In this event, the arbitrator shall be prohibited from certifying a class action. There shall be no right or authority for any claim(s) to be arbitrated on a class action basis. Further, the dancer hereby specifically waives her collective action rights.[4]

The Contract bears the handwritten signature of the "Dancer/Independent Contractor" and the handwritten signature of the representative for "N'Awlins Entertainment Group."[5] Defendant also provides two Affidavits of Kaycee Fruchtnicht ("the Fruchtnicht Affidavits") to authenticate the document and identify the dancer's signature as Plaintiff's.

Finding the parties' initial briefing insufficient, on April 28, 2021, this Court Ordered that the parties submit additional briefing to this Court addressing whether the contract theories of agency and third-party beneficiary should apply to the interpretation of the Contract. The parties filed their supplemental briefings as directed. In support of Defendant's Supplemental

---

[2] LA. REV. STAT. § 23:631, *et seq.*
[3] *See* Doc. 12-2 at 2.
[4] *Id.*
[5] *See id.*

Memorandum, Defendant attaches a third affidavit, the Affidavit of P.J. Olano, ("the Olano Affidavit"), to verify that the signatory for N'Awlins Entertainment Group had the authority to sign the Contract on behalf of Defendant Silver Bourbon.

In both the original and supplemental briefings, Defendant asks this Court to find that the Contract's arbitration clause precludes Plaintiff from pursuing her claims in this Court and dismiss Plaintiff's claims against it. Plaintiff opposes.

## **LEGAL STANDARD**

Defendant moves to dismiss this action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). The Fifth Circuit has repeatedly declined to address the proper procedural vehicle for bringing such motions.[6] Because the Fifth Circuit has accepted Rule 12(b)(3) as a proper method for dismissal based on an arbitration clause,[7] the Court analyzes Plaintiff's Motion under Rule 12(b)(3).[8]

On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff.[9] Rule 12(b)(3) permits the court to look at all evidence in the

---

[6] Noble Drilling Servs., Inc. v. Certex USA, Inc., 620 F.3d 469, 472 n.3 (5th Cir. 2010) (collecting cases).

[7] *See, e.g., id*.; Lim v. Offshore Specialty Fabricators, Inc., 404 F.3d 898, 902 (5th Cir. 2005).

[8] *See* Sinners & Saints, LLC v. Noire Blanc Films, LLC, 937 F. Supp. 2d 835 (E.D. La. 2013) (assessing motion to dismiss based on arbitration clause under Rule 12(b)(3) where parties moved to dismiss under Rule 12(b)(1) or Rule 12(b)(3)).

[9] Braspetro Oil Servs. Co. v. Modec (USA), Inc., 240 Fed. App'x 612, 615 (5th Cir. 2007); Ross v. Digioia, Jr., No. 11–1827, 2012 WL 72703, at *2 (E.D. La. Jan. 10, 2012).

3

record "beyond simply those facts alleged in the complaint and its proper attachments."[10]

When venue is challenged, district courts in the Fifth Circuit have been inconsistent in allocating the burden of proof.[11] Most courts in this District, however, hold that a plaintiff bears the burden of proof.[12] This Court follows their lead and holds that Plaintiff bears the burden of establishing proper venue.[13]

## LAW AND ANALYSIS

The question before the Court is whether Plaintiff's claims are subject to arbitration. This inquiry is governed by the Federal Arbitration Act ("FAA"),[14] which broadly applies to any written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction."[15]

Within the Fifth Circuit, a multi-step analysis governs whether parties should be compelled to arbitrate a dispute.[16] First, the court must determine

---

[10] Lighthouse MGA, L.L.C. v. First Premium Ins. Grp., Inc., 448 Fed. App'x 512, 514 (5th Cir. 2011).

[11] See Uviado, LLC v. United States, 755 F. Supp. 2d 767, 779 n.7 (S.D. Tex. 2010) (acknowledging split in authority); Ross, 2012 WL 72703, at *2 n.4 (same).

[12] See, e.g., Summer v. Kenton, OH Policea, No. 11–3162, 2012 WL 1565363, at *4 (E.D. La. May 2, 2012); Vaughn Med. Equip. Repair Serv. LLC v. Jordan Reses Supply Co., No. 10–00124, 2010 WL 3488244, at *4 (E.D. La. Aug. 26, 2010); Ross, 2012 WL 72703, at *2.

[13] See 14D Wright, Miller, & Cooper, Federal Practice and Procedure, § 3826 (3d ed. 2013) ("The position that probably represents the weight of judicial authority, is that, when an objection has been raised, the burden is on the plaintiff to establish that the district he or she has chosen is a proper venue.").

[14] 9 U.S.C. § 1 et seq.,

[15] Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

[16] JP Morgan Chase & Co. v. Conegie ex rel. Lee, 492 F.3d 596, 598 (5th Cir. 2007).

4

whether the parties agreed to arbitrate the dispute.[17] This determination itself involves two separate inquiries: (1) whether there is a valid agreement to arbitrate between the parties, and, if so, (2) whether the dispute in question falls within the scope of that agreement.[18] "While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate."[19] Instead, courts apply state contract law to determine the validity of the arbitration agreement.[20] As to the issue of scope, however, the court will apply federal policy and resolve ambiguities in favor of arbitration.[21] Finally, once the court is satisfied that the agreement to arbitrate is valid and encompasses the matter at hand, the court must also consider whether any federal statute or policy renders the claims non-arbitrable.[22]

## I. The Parties Agreed to Arbitrate this Dispute.

### A. A Valid Arbitration Agreement Exists.

Plaintiff provides this Court with two primary arguments as to why the Contract presented by Defendant does not constitute a valid arbitration agreement. First, Plaintiff asserts that the Affidavit of Kaycee Fruchtnicht does not properly authenticate the Contract. Second, Plaintiff argues that, even if the Contract is properly authenticated, the Contract does not evidence mutual intent to arbitrate. The Court will address each contention in turn.

---

[17] Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004).
[18] Sherer v. Green Tree Servicing LLC, 548 F.3d 379, 381 (5th Cir. 2008).
[19] Janvey v. Alguire, 847 F.3d 231, 240 (5th Cir. 2017) (quoting Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004)).
[20] Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 236 (5th Cir. 2013).
[21] *Id.* at 237.
[22] Primerica Life Ins. Co. v. Brown, 304 F.3d 469, 471 (5th Cir. 2002).

*1. The Document is Properly Authenticated.*

To authenticate the Contract, Defendant attached two Affidavits of Kaycee Fruchtnicht. The first Fruchtnicht Affidavit states that Fruchtnicht appeared before the notary and stated: (1) that "[s]he is a person of the full age of majority and resident of the State of Louisiana," (2) that "[s]he is the custodian of records of the personnel files of Silver Bourbon, Inc.," and (3) that "[t]he attached agreement signed by Lauren Kikuchi is kept in the ordinary course of business."[23] Plaintiff argues that the Affidavit is deficient because it does not adequately convey that Fruchtnicht testified from personal firsthand knowledge or under the penalty of perjury, does not describe the circumstances of Plaintiff's alleged signing of the Contract, and is written in the third person.[24] In response to Plaintiff's arguments, Defendant attached a new Affidavit of Kaycee Fruchtnicht to its Reply, which adds that Fruchtnicht is personally aware of the matters stated, that she makes the statements under penalty of perjury, and that the agreement was made in kept as part of regular business practice.[25]

"To authenticate documents used to support a motion, a party must attach the documents as exhibits to an affidavit made by a person through whom exhibits could be admitted into evidence at trial."[26] Federal Rule of Evidence Rule 901(a) provides that the requirement of authenticating or

---

[23] Doc. 12-2 at 1.

[24] Plaintiff also asserts that the Affidavit fails to identify the corporate relationship between Defendant, Silver Bourbon, and the Contract's signatory, N'Awlins Entertainment Group. The Court addresses this argument in the following section.

[25] *See* Doc. 20-1.

[26] BP Expl. & Prod. Inc. v. Cashman Equip. Corp., No. H-13-3046, 2016 WL 1387907, at *2 (S.D. Tex. Apr. 8, 2016).

identifying an item of evidence is satisfied by "evidence sufficient to support a finding that the matter in question is what the proponent claims it is." The Fifth Circuit has held, however, that Rule 901 "does not require conclusive proof of authenticity before allowing the admission of disputed evidence;" rather, the proponent need only present "some evidence" sufficient to support the requisite finding.[27] Additionally, although this matter is not at the summary judgment stage, this Court also finds instructive Federal Rule of Civil Procedure 56(c)(4), which provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

The Court finds that the Fruchtnicht Affidavits sufficiently authenticate the Contract. In the Affidavits, Fruchtnicht states that she is the custodian of the records, that such records are kept in the ordinary course of business, and that she has personal knowledge that the Contract is signed by Plaintiff. The Fruchtnicht Affidavits thus demonstrate that Fruchtnicht is an individual with personal knowledge of the Contract through whom the Contract could be admitted as evidence under the business records exception.[28] Further, the Court finds significant the fact that Plaintiff only attacks the form, not the substance, of the Affidavits. As Plaintiff has not presented a counter affidavit or other evidence contradicting Defendant's contention that Plaintiff signed

---

[27] In re McLain, 516 F.3d 301, 308 (5th Cir. 2008).
[28] *See* FED. R. EVID. 803(6) (Hearsay exception for "Records of a Regularly Conducted Activity").

the Contract, the Court finds that the Fruchtnicht Affidavits sufficiently authenticate Plaintiff's signature.

    *2. The Parties Mutually Assented to Arbitrate.*

    The Fifth Circuit applies "ordinary state-law principles that govern the formation of contracts" to discern whether a valid agreement to arbitrate exists.[29] As the record is devoid of evidence that would potentially implicate the law of any state other than Louisiana, the Court will analyze the Contract under Louisiana law.

    Louisiana law provides that a valid contract must satisfy four elements: (1) capacity to contract, (2) mutual consent; (3) a lawful cause; (4) and an object that is lawful, possible, and determined or determinable.[30] Further, the burden of proof falls on the party claiming the existence of a contract.[31] Here, the only element in dispute is that of mutual consent. Plaintiff asserts that the Contract itself "does not establish that Plaintiff and Defendant mutually assented to arbitrate Plaintiff's claims."[32]

    First, Plaintiff asserts that the Contract does not accurately represent that Plaintiff signed the agreement. Although the Court acknowledges that the dancer's signature on the Contract is not easily identified as that of Lauren Kikuchi, the Court has already found that both the Affidavits and the absence of contradictory evidence sufficiently demonstrate that the signature on the Contract belongs to Plaintiff.

---

[29] Fleetwood Enterprises, Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002).

[30] Granger v. Christus Health Cent. La., 144 So. 3d 736, 760–61 (La. 2013). *See also* LA. CIV. CODE arts. 1918, 1927, 1966, 1971.

[31] LA. CIV. CODE art. 1831.

[32] Doc. 14 at 6.

8

Second, Plaintiff argues that the Contract does not identify how a contract between Plaintiff and N'Awlins Entertainment Group creates a contract between Plaintiff and Defendant Silver Bourbon. Plaintiff thus asserts that, as a non-signatory to the contract, Defendant cannot enforce its terms against Plaintiff. In response, Defendant refutes Plaintiff's assertion that it is a non-signatory to the contract, contending that it is a signatory by way of its corporate relationship with N'Awlins Entertainment Group. Defendant, however, provides no law or evidence of such a corporate relationship in support of this assertion. Thus, the Court agrees with Plaintiff that the rules applicable to non-signatories govern.

In *Arthur Andersen LLP v. Carlisle*, the United States Supreme Court held that, under the FAA, arbitration agreements may be enforced by or against non-signatories where allowable under traditional principles of state contract law.[33] Here, the Court finds that the Defendant has a right to enforce the Contract under the Louisiana theory of agency or mandate.[34]

Under Louisiana law, "[a] mandate is a contract by which a person, the principal, confers authority on another person, the mandatary or agent, to

---

[33] 556 U.S. 624, 631 (2009) ("'[T]raditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel . . .'") (citations omitted). *See* Crawford Pro. Drugs, Inc. v. CVS Caremark Corp., 748 F.3d 249, 255 (5th Cir. 2014) (holding that, in light of the *Arthur Andersen* decision, "we recognize that our prior decisions applying federal common law, rather than state contract law, to decide [whether a contract may be enforced by or against nonparties to it], have been modified to conform with *Arthur Andersen*") (citing Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524 (5th Cir. 2000)).

[34] *Grigson*, 210 F.3d 524, 532 (Non-signatories "may be bound by or acquire rights under an arbitration agreement under ordinary state-law principles of agency or contract.") (citations omitted).

transact one or more affairs for the principal."[35] "A mandatary's power or authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct."[36] An actual agency contract may be created expressly or implicitly.[37] "It is created by implication when, from the nature of the principal's business and the position of the agent within the business, the agent is deemed to have permission from the principal to undertake certain acts which are reasonably related and necessary concomitant of the agent's express authorization."[38] In the absence of actual authority, the principal may still be bound to a third person under the doctrine of apparent authority.[39] Under the doctrine of apparent authority, an agent may bind his principal without the actual authority to do so if the principal manifests to the third person "that the agent is authorized to engage in the particular transaction."[40] Moreover, when the mandatary discloses the identity of the principal or the existence of a mandatary relationship to the third person, the third person is bound to the principal for the performance of the contract.[41]

Here, the Court finds that N'Awlins Entertainment had actual express authority to enter into the Contract on behalf Defendant Silver Bourbon and

---

[35] McLin v. Hi Ho, Inc., 118 So. 3d 462, 467 (La. App. 1 Cir. 2013) (citing LA. CIV. CODE art. 2989).

[36] Id (quoting Boulos v. Morrison, 503 So.2d 1, 3 (La.1987)).

[37] See id. (citing AAA Tire & Export, Inc. v. Big Chief Truck Lines, Inc., 385 So.2d 426, 429 (La. App. 1 Cir. 1980)).

[38] Id. (citing AAA Tire & Export, Inc., 385 So.2d at 429).

[39] See id. at 468.

[40] Id. (quoting Tedesco v. Gentry Dev., Inc., 540 So.2d 960, 963 (1989)).

[41] See LA. CIV. CODE art. 3022 ("A third person with whom a mandatary contracts in the name of the principal, or in his own name as mandatary, is bound to the principal for the performance of the contract.").

10

that the nature of this agency relationship was disclosed to Plaintiff. As evidence of N'Awlins' express authority to contract on Silver Bourbon's behalf, the Court finds sufficient the Affidavit of P.J. Olano, the President of Defendant Silver Bourbon, wherein Olano swears that "N'Awlins Entertainment Group and the person who signed the Arbitration Agreement on behalf of N'Awlins Entertainment Group had the actual specific authority to sign on behalf of Silver Bourbon d/b/a Scores."[42] This agency relationship was clearly disclosed to Plaintiff as the first paragraph of the Contract itself states that "[t]his agreement is made and entered into . . . after negotiations by and between N'Awlins Entertainment Group Individually and on behalf of its member clubs: Scores New Orleans, Temptations, Stilletto's, Lipstixx, Centerfolds, Scores West, and The Rainbow Room and [the Dancer]."[43] As the record demonstrates that the "Scores New Orleans" referenced in the Contract is Defendant Silver Bourbon,[44] the Court finds that N'Awlins Entertainment Group entered into the Contract with Plaintiff as a mandatary for its member clubs, including Defendant, and that Plaintiff was aware of this when she agreed to its terms.

Plaintiff asks this Court to disregard the Olano Affidavit because of its alleged formal deficiencies and because it was improperly filed without leave

---

[42] Doc. 29-1.

[43] Doc. 12-2 at 2.

[44] In Plaintiff's Complaint, Plaintiff identifies Defendant as Silver Bourbon, Inc. d/b/a Scores Gentlemen's Club located in New Orleans. Doc. 1 at 1. In Plaintiff's Opposition, she states that she was a dancer at "Defendant's Scores Strip Club in New Orleans." Doc. 14 at 1. The Court finds that these admissions in the pleadings, coupled with the Fruchtnicht Affidavits stating that the Contract was kept within the personnel files of Silver Bourbon, Inc., sufficient to identify the entity referenced in the Contract, "Scores New Orleans," as Defendant Silver Bourbon, Inc. d/b/a Scores Gentleman's Club.

of court. The Court, however, finds that the Olano Affidavit was properly filed in conformity with this Court's Order requiring supplemental briefing and, just as with the Fruchtnicht Affidavits, that the Olano Affidavit is sufficient to act as evidence in support of the matters asserted.

Finally, even in the absence of an agency relationship, the Court finds that the plain language of the Contract evinces a mutual intent for Plaintiff to arbitrate this dispute with Defendant. In *Sherer v. Green Tree Servicing LLC*, the Fifth Circuit found that it need not resort to state contract law theories when the terms of the contract expressly stated when the plaintiff could be compelled to arbitrate with non-signatories.[45] The Loan Agreement at issue in *Sherer* required the plaintiff to arbitrate "any claims arising from 'the relationships which result from th[e] [a]greement.'"[46] Finding that the plaintiff's relationship with the defendant loan server was such a relationship, the Fifth Circuit held that the plaintiff had validly agreed to arbitrate with the non-signatory defendant.[47] Here, the Contract requires Plaintiff to resolve by arbitration "any dispute [that should] arise in connection with this contract and/or their working at any of the subject clubs."[48] Plaintiff's current lawsuit for damages under the FLSA and LWPA against Defendant, a listed member club, falls squarely within the scope of the provision. Thus, just like in *Sherer*, the Court finds that Plaintiff has agreed to arbitrate her claims against the non-signatory Defendant.

---

[45] 548 F.3d at 381–82.
[46] *Id*. at 382.
[47] *Id*.
[48] Doc. 12-2 at 2.

12

**B. The Dispute in Question Falls Within the Scope of the Arbitration Agreement.**

Finding the Contract and its arbitration provision valid and enforceable, the Court must next determine whether this dispute falls within the scope of the arbitration provision.[49] The Contract's arbitration provision states: "It is agreed between the Dancer/Independent Contractor and N'Awlins Entertainment Group that should any dispute arise in connection with this contract and/or their working at any of the subject clubs that said dispute shall be resolved by arbitration only."[50] As this Court found in the previous Section, Plaintiff's claims that she was misclassified and improperly compensated under the FLSA and LPWA by Defendant, a "subject club," clearly fall within the scope of the arbitration provision.

**II. No Federal Statute or Policy Renders the Claim Non-arbitrable and Dismissal is Appropriate.**

Finally, the Court must determine "whether any federal statute or policy renders the claims nonarbitrable."[51] The Court is not aware of any federal statute precluding arbitration of Plaintiff's FLSA or LWPA claims, and Plaintiff has not presented this Court with any contrary policy.[52] The Court thus finds this inquiry satisfied.

---

[49] *Sherer*, 548 F.3d at 381.

[50] Doc. 12-2.

[51] *JP Morgan Chase & Co.*, 492 F.3d at 598.

[52] *See* Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 297 (5th Cir. 2004) (finding that FLSA claims are subject to arbitration).

**III. Whether the Court Should Dismiss or Stay the Case.**

Under the FAA, "a stay is mandatory upon a showing that the opposing party has commenced suit 'upon any issue referable to arbitration under an agreement in writing for such arbitration . . .'"[53] However, "[w]hen all of the issues raised in the case are referable to arbitration, courts may dismiss, rather than stay, the case."[54] Under such circumstances, "dismissal is within the court's discretion; it is not required."[55] Here, Defendant Silver Bourbon asks that the Court dismiss Plaintiff's case and Plaintiff has not alternatively asked that this matter be stayed. Accordingly, the Court finds that the matter should be dismissed without prejudice.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**.

**IT IS ORDERED** that this Plaintiff's claims are hereby **DISMISSED WITHOUT PREJUDICE.**

New Orleans, Louisiana this 1st day of June, 2021.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[53] Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) (quoting Campeau Corp. v. May Dept. Stores Co., 723 F.Supp. 224 (S.D.N.Y. 1989)).

[54] Henry v. New Orleans Louisiana Saints L.L.C., No. CV 15-5971, 2016 WL 2901775, at *3 (E.D. La. May 18, 2016) (citing Alford, 975 F.2d at 1164).

[55] Id. (citing Apache Bohai Corp., LDC v. Texaco China, B.V., 330 F.3d 307, 311 n.9 (5th Cir. 2003)).