UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LAUREN KIKUCHI, on Behalf of Herself and All Other Similarly Situated Individuals,<br><br>   PLAINTIFF,<br><br>vs.<br><br>SILVER BOURBON, INC.<br>D/B/A SCORES GENTLEMEN'S CLUB<br><br>   DEFENDANT. | Case No. 20-cv-2764<br><br>JUDGE JANE TRICHE MILAZZO<br><br>MAGISTRATE JUDGE JANIS VAN MEERVELD |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION TO REOPEN LITIGATION**

Plaintiff Lauren Kikuchi ("Plaintiff"), individually and on behalf of other similarly-situated current and former exotic dancers employed by Silver Bourbon, Inc. d/b/a Scores Gentlemen's Club ("Defendant" or "Scores" or "the Club"), hereby submits this Memorandum in Support of Plaintiff's Motion to Reopen this Litigation (the "Motion to Reopen").

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was employed by Defendant as an exotic dancer at its Scores Gentlemen's Club located at 416 Bourbon Street, New Orleans, Louisiana 70130 during the period of about June 2012 through about March 2020. On October 8, 2020, Plaintiff filed her Class and Collective Action Complaint in this Court. R. Doc. 1. The class/collective was composed of female employees who worked as exotic dancers at Scores. Plaintiff alleged Defendant misclassified Plaintiff and all the other exotic dancers working at Scores as independent contractors when Plaintiff and all of the other exotic dancers should have been classified as employees and, as a result, that Defendant unlawfully deducted and assigned wages, tips, and gratuities belong to

Plaintiff and other members of the class and collective and failed to pay Plaintiff and all other members of the class and collective minimum wage compensation in violation of the Fair Labor Standards Act (FLSA) and the Louisiana Wage Payment Act (LWPA).

On November 12, 2020, Plaintiff filed a Motion for Notice to Potential Plaintiffs and for Conditional Certification. R. Doc. 11. On November 24, 2020, Defendant filed a Motion to Dismiss pursuant to Rule 12(b)(3). R. Doc. 12. The sole basis for this Motion was that Plaintiff had executed an agreement at the onset of her employment with Defendant that contained an arbitration clause. R. Doc. 12-1. Plaintiff filed her Opposition to the Motion on December 1, 2020, arguing that Defendant failed to demonstrate that a valid and enforceable arbitration contract existed between Plaintiff and Defendant, as Defendant was not a party to the agreement. R. Doc. 14. This Court ordered supplemental briefing addressing whether the theories of agency and third-party beneficiary allowed Defendant to enforce the agreement against Plaintiff. R. Doc. 28. The parties submitted the requested supplemental briefing. R. Doc. 28 and R. Doc. 30.

On June 1, 2021, this Court found that a valid arbitration agreement existed, held that Plaintiff's claims fell within the scope of that agreement, and entered an Order granting the Motion to Dismiss. R. Doc. 31. In the Court's June 1, 2021 Order, the Court held that N'Awlins Entertainment "had actual express authority to enter into the [arbitration agreement] on behalf [of] Defendant Silver Bourbon and that the nature of this agency relationship was disclosed to Plaintiff." *Id.* at 10-11. The Court cited the language of the arbitration agreement, which "state[d] that '[t]his agreement is made and entered into . . . after negotiations by and between N'Awlins Entertainment Group Individually and on behalf of its member clubs: Scores New Orleans, Temptations, Stilletto's, Lipstixx, Centerfolds, Scores West, and the Rainbow Room and [the Dancer].'" *Id.* at 11 (citing R. Doc. 12-2 at 2). The Court dismissed Plaintiff's claims without

2

prejudice. *Id.* at 14.

On June 2, 2021, counsel for Plaintiff emailed counsel for Defendant stating that Plaintiff would like to commence arbitration as soon as possible, noting four separate but related matters for arbitration (one on behalf of Plaintiff against Scores, one on behalf of Plaintiff against one of the member clubs where she also worked, Stiletto's Cabaret, one on behalf of another dancer, Priscilla Cisneros, against Scores, and one on behalf of Ms. Cisneros against member club Stiletto's Cabaret[1]), and inquiring if Defendant would agree to litigation of the four referenced matters in a single arbitration proceeding. Counsel for Defendant responded that he would talk to his client and asked "can you give me your proposed disputes you reference[.]"[2] Counsel for Plaintiff responded with a summary of the four claims of the two dancers, and noted that, as Defendant had moved for arbitration in the Kikuchi v. Scores proceeding and the Court had determined that arbitration was the proper forum, the easiest and most efficient way forward would be to litigate the two dancers' claims in a single arbitration.[3] After some back and forth, on June 14, 2021, counsel for Defendant stated that his client would not agree to a single arbitration.[4] Counsel for Plaintiff responded that he would file two separate arbitration complaints with the AAA, to which counsel for Defendant responded "IT SEEMS TO ME THAT YOU HAVE MORE THAN TWO CASES BT I CAN BE WRONG".[5] Counsel for Plaintiff then inquired if counsel for Defendant wanted him to file four separate arbitration actions (one for each club and each dancer), and counsel for Defendant replied "file whatever

---

[1] Exhibit A, June 2, 2021 *in globo* emails regarding arbitration of four matters.
[2] *Id.*
[3] *Id.*
[4] Exhibit B, June 14, 2021 *in globo* emails regarding Defendant's refusal to agree to a single arbitration.
[5] *Id.* (all caps in this email (and other all caps emails cited herein) in original).

you have to".[6]

On July 1, 2021, counsel for Plaintiff filed four separate arbitration complaints with the AAA (collectively, the "Arbitration Complaints"): (1) Priscilla Cisneros v. Famous Bourbon Management Group, Inc.; and Temptations, Inc.; and N'awlins Entertainment Group, Inc.; and Guy Orlando, Jr., Guy Orlando III, and Scott Yaffee; (2) Priscilla Cisneros v. Famous Bourbon Management Group, Inc.; and Silver Bourbon, Inc.' and N'awlins Entertainment Group, Inc.; and Guy Orlando, Jr. and Guy Orlando III; (3) Lauren Kikuchi v. Famous Bourbon Management Group, Inc.; and Temptations, Inc.; and N'awlins Entertainment Group, Inc.; and Guy Orlando, Jr., Guy Orlando III, and Scott Yaffee; and (4) Lauren Kikuchi v. Famous Bourbon Management Group, Inc.; and Silver Bourbon, Inc.' and N'awlins Entertainment Group, Inc.; and Guy Orlando, Jr. and Guy Orlando III.[7]

On July 21, 2021, the AAA sent correspondence to the parties noting that, as the arbitrations involved disputes between an employee and a business entity and/or involved work-related claims, the AAA would apply the Commercial Arbitration Rules and Employment Fee Schedule to this dispute.[8] After counsel for Defendant/Respondent initially refused to agree to these rules, or to some portion of these rules, resulting in much confusion, the parties agreed to the application of the Rules and Fee Schedule proposed by the AAA.[9] The Fee Schedule provides that the Company (i.e., the Respondent/Defendant) is responsible for a filing fee of $1,900 for each dispute, a case management fee of $750 for each single arbitrator dispute, and that all

---

[6] *Id*.
[7] Exhibit C, *in globo* Arbitration Complaints and correspondence transmitting same to counsel for Defendant. As discussed herein, the four arbitrations were later combined into a single arbitration, case no. 01-21-0004-5784.
[8] Exhibit D, July 21, 2021 AAA email regarding application of rules.
[9] Exhibit E, *in globo* email correspondence regarding application of rules. The arbitration agreement itself was silent as to responsibility for payment of arbitration fees and other expenses.

4

expenses of the arbitrator, other arbitration expenses, and the arbitrator's fee shall be borne by the Company.[10] Commercial Rule R-57, Remedies for Nonpayment provides in part:

> (e) Upon receipt of information from the AAA that full payments have not been received, the arbitrator, on the arbitrator's own initiative or at the request of the AAA or a party, may order the suspension of the arbitration. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.
>
> (f) If the arbitration has been suspended by either the AAA or the arbitrator and the parties have failed to make the full deposits requested within the time provided after the suspension, the arbitrator, or the AAA if an arbitrator has not been appointed, may terminate the proceedings.[11]

On July 29, 2021, the AAA sent the first of what would be many letters noting that the Defendant had failed to pay its share of the filing fee in the amount of $1,900 for two of the four cases.[12] Counsel for Plaintiff sent correspondence to the AAA inquiring as to why two of the four cases had not been docketed,[13] and followed up again on August 12, 2021 as to what additional documents and/or payments the AAA required in order to move forward.[14] The AAA responded on August 12, 2021 that Defendant/Respondent had not completed the initial forms consenting to the AAA for two of the four cases, and reiterated that Defendant/Respondent had not paid the filing fee for the remaining two.[15]

On August 16, 2021, the AAA again sent correspondence noting that Defendant/Respondent had still failed to pay its share of the filing fees, and setting a deadline for payment of August 31, 2021.[16] On August 31, 2021, the AAA wrote again, noting that Defendant/Respondent had still failed to pay its share of the filing fees by the August 31

---

[10] Exhibit F, Employment Fee Schedule.
[11] Exhibit G, Commercial Rules, p. 31.
[12] Exhibit H, *in globo* July 29, 2021 letters.
[13] Exhibit I, July 29, 2021 Greenberg correspondence to AAA.
[14] Exhibit J, August 12, 2021 Greenberg correspondence to AAA.
[15] Exhibit K, August 12, 2021 AAA email.
[16] Exhibit L, *in globo* August 16, 2021 AAA correspondence regarding nonpayment.

5

deadline, and extended the deadline for payment until September 14, 2021.[17] On September 9, 2021, the AAA sent an email to counsel for all parties in response to counsel for Plaintiff's request for a status update,[18] noting that Defendant/Respondent had still failed to pay its share of the fees for all four matters.[19]

On September 16, 2021, the AAA sent emails to the parties noting that they still had not received the filing fees from Defendant/Respondent and threatening to close the files on September 23, 2021 if payment was not received.[20] The following day, the AAA sent another letter to counsel threatening to close its files if the Defendant's payment was not received by October 1, 2021.[21] Between September 20 and 23, 2021, counsel for Defendant and the AAA exchanged several emails regarding counsel's alleged failure to be furnished with a payment link and/or inability to access a payment link.[22] On October 5, 2021, the AAA sent correspondence noting that it had not received Defendant/Respondent's share of the filing fees and, absent payment, would close its files on October 12.[23] Counsel for Defendant responded "I DEFINITELY PAID THIS".[24] On October 6, 2021, the AAA responded that it had received payment for the two Cisneros cases but had not received payment for either of the Kikuchi cases.[25] Counsel for Defendant responded that he thought there were only two arbitrations and asked that the AAA correct their records.[26] Counsel for Plaintiff then responded that Ms.

---

[17] Exhibit M, *in globo* August 31, 2021 AAA correspondence regarding nonpayment.
[18] Exhibit N, Greenberg September 9, 2021 correspondence to AAA.
[19] Exhibit O, September 9, 2021 AAA email.
[20] Exhibit P, *in globo* September 16, 2021 emails regarding nonpayment.
[21] Exhibit Q, September 17, 2021 correspondence regarding nonpayment.
[22] Exhibit R, *in globo* September 20-23 email correspondence regarding payment link.
[23] Exhibit S, October 5, 2021 AAA email.
[24] Exhibit T, October 5, 2021 Barbera email.
[25] Exhibit U, October 6, 2021 AAA email.
[26] Exhibit V, *in globo* October 6, 2021 email correspondence.

Cisneros had a claim against Stilleto's and a claim against Scores, and Ms. Kikuchi also had a claim against Stilleto's and a claim against Scores, for a total of four claims.[27] Counsel for Defendant responded: "I THOUGHT I HAD AGREED SOME TIME AGO THAT YOU COULD BRING THEM IN ONE CASE FOR EACH EMPLOYEE."[28] Counsel for Plaintiff responded that this was not the agreement, and counsel for Defendant then asked that "YOU BRING ALL OF KUKUCHIAS AND CISNEROS CLAIMS IN ONE ARBITRATION EACH."[29] Counsel for Plaintiff then proposed, as he did on June 2, 2021, the day after the Court's entry of the Order of Dismissal, that the parties agree to a single arbitration, and this time, counsel for Defendant accepted.[30] On November 9, 2021, the AAA appointed Thomas Crane to arbitrate the disputes.[31]

Defendant's dilatory tactics continued. On December 15, 2021, counsel for Plaintiff served discovery requests on Defendant, to which Defendant failed to timely respond despite the parties' previous agreement to discovery deadlines.[32] On February 7, 2022, counsel for Plaintiff filed a motion to compel,[33] which the arbitrator granted on March 11, 2022.[34] On March 21, 2022, the AAA sent correspondence to counsel noting that its records indicated that Defendant/Respondent owed a total outstanding balance of $5,625 in various fees.[35] On April 11, 2022, the arbitrator suspended the proceedings due to Defendant's nonpayment in

---

[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] Exhibit W, *in globo* correspondence from AAA notifying parties of Crane appointment and attached Notice of Compensation.
[32] Exhibit X, December 15, 2021 email serving discovery requests.
[33] Exhibit Y, Motion to Compel.
[34] Exhibit Z, Order granting Motion to Compel.
[35] Exhibit AA, March 21, 2022 correspondence.

accordance with the Commercial Rules.[36] Counsel for Defendant did not respond to the arbitrator's order of suspension and never paid the fees. On April 27, 2022, the AAA officially terminated the arbitration due to Defendant's nonpayment of various fees after multiple warnings, reminders, and extensions.[37] Accordingly, Plaintiff moves to reopen this litigation.[38]

## II.     LAW AND ARGUMENT

The Federal Arbitration Act ("FAA") provides that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The agreement to arbitrate a dispute may be revoked and the parties may waive their rights to enforce arbitration because "[t]he right to arbitrate a dispute, like all contract rights, is subject to waiver." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009). "A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right" resulting in prejudice to the other party. *Miller Brewing Co. v. Fort Worth Distr. Co., Inc.*, 781 F.2d 494, 497 (5th Cir. 1986) (*quoting Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966)).

Numerous courts have held that a defendant's failure to pay its arbitration fees resulting in the termination of the arbitration proceedings constitutes a waiver of its right to arbitration, and that such a defendant is therefore bound by the normal procedures of federal law – litigation in federal court. *See, e.g.*, *Noble Cap. Fund Mgmt., L.L.C. v. US Cap. Glob. Inv. Mgmt., L.L.C.*, No.

---

[36] Exhibit AB, *in globo* Order suspending proceedings and correspondence transmitting same.
[37] Exhibit AC, *in globo* correspondence and Order terminating arbitration.
[38] Subsequent to the instant motion, Plaintiff reserves the right to file additional necessary motions, including but not limited to a motion for leave to file an amended complaint, a motion for leave to file a new motion for conditional certification, and any other motions related to Defendant's conduct in moving to compel an arbitration in which it failed to pay required fees or participate in good faith.

21-50609, 2022 WL 1099006, at *2 (5th Cir. 2022) (upholding district court's denial of defendant's motion to compel arbitration of re-filed litigation after arbitration had been terminated due to defendant's failure to pay its portion of the arbitration expenses); *Sink v. Aden Enterprises, Inc.*, 352 F.3d 1197, 1199 (9th Cir. 2003); *Cota v. Art Brand Studios, LLC*, No. 21-CV-1519 (LJL), 2021 WL 4864588, at *9 (S.D.N.Y. Oct. 15, 2021) (denying defendant's motion to compel arbitration of reopened litigation after arbitration had been dismissed due to defendant's failure to pay fees); *Mason v. Coastal Credit, LLC*, No. 3:18-cv-835-J-39MCR, 2018 WL 6620684, at *6 (M.D. Fla. Nov. 16, 2018) (holding that the defendant waived the right to arbitration by failing to pay the required AAA fees, and noting that "Plaintiff paid the AAA fees, but Defendant did not. As a result of Defendant's default, the AAA terminated the arbitration. Accordingly, Defendant proceeded inconsistently with his right to arbitration"); *Spano v. V & J Nat'l Enters., LLC*, 264 F. Supp. 3d 440, 446-47, 459 (W.D.N.Y. 2017) (AAA terminated proceeding when employer failed to pay filing fee despite at least five reminders); *Polit v. Glob. Foods Int'l Corp.*, 2016 WL 632251, at *2 (S.D.N.Y. Feb. 17, 2016) (AAA "assume[d] th[e] matter [was] settled" and closed the case after employer failed to pay arbitrator fees and did not respond to communication); *Day v. Clymo*, No. 6:13-CV-871-ORL-40, 2015 WL 3830346, at *2 (M.D. Fla. June 18, 2015) (denying defendant's motion to compel arbitration of litigation that had been reopened after defendant failed to pay arbitration fees); *Garcia v. Mason Cont. Prod., LLC*, No. 08-23103-CIV, 2010 WL 3259922, at *4 (S.D. Fla. Aug. 18, 2010) (reopening previously dismissed litigation following the employer's failure to pay arbitration fees resulting in the arbitrator closing the matter and refusing to reopen it); *Stowell v. Toll Bros*, 06 CV 2103, 2007 WL 30316, at *1 (E.D. Pa. Jan. 4, 2007).

In this case, Plaintiff filed her Complaint on October 8, 2020. R. Doc. 1. In lieu of filing a responsive pleading to the Complaint, Defendant filed a motion to dismiss, seeking to compel

9

arbitration and dismiss the case pursuant to Fed. R. Civ. P. 12(b)(3). R. Doc. 12. This Court granted Defendant's motion on June 1, 2021. R. Doc. 31. Plaintiff promptly initiated arbitration in accordance with that order. Between July and October 2021, although Plaintiff paid her share of the filing fees, Defendant repeatedly delayed in paying its share of the filing fees, despite numerous reminders and extensions from the AAA. As of March 21, 2022, approximately nine months after Plaintiff initiated the arbitration and more than seventeen months after Plaintiff initially filed suit, Defendant had still not paid the $750 case management fee which, pursuant to the Fee Schedule, was due 90 days after July 1, 2021, the date Plaintiff filed the arbitration, and had not paid deposits required by the arbitrator in the amount of $4,875.[39] The AAA, which had previously granted Defendant numerous extensions to pay its share of the fees, set a deadline of April 1, 2022 for Defendant to pay the outstanding balance.[40] Defendant did not pay the fees by the deadline, nor did it attempt to contact the AAA or the arbitrator to request an extension or otherwise explain or excuse its failure to timely pay. Accordingly, on April 11, 2022, the arbitrator suspended the proceedings.[41] Defendant still did not pay the fees, and the AAA terminated the proceedings on April 27, 2022.[42] As in the cases cited above, this failure of Defendant, who had moved for dismissal of this litigation in favor of arbitration, constitutes a default and a thus forfeiture of its right to arbitration. Defendant acted inconsistently with its contractual right to arbitrate by moving this Court to arbitrate and then repeatedly failing to timely pay its share of fees in the arbitration proceeding, resulting in the termination of the arbitration. Plaintiff, who filed her Complaint in

---

[39] See Exhibit AA, March 21, 2022 correspondence. The March 21, 2022 letter refers to prior communications between the AAA and counsel for Defendant/Respondent specifically with respect to the deposits required by the arbitrator, but Plaintiff does not have any record that Plaintiff received the referenced correspondence.
[40] *Id.*
[41] Exhibit AB, *in globo* Order suspending proceedings and correspondence transmitting same.
[42] Exhibit AC, *in globo* Order terminating proceedings and correspondence transmitting same.

October 2020, has already suffered significant prejudice in the prosecution of her claims due to the inexcusable delays perpetuated by Defendant and, given that Defendant's nonpayment caused the arbitration to be terminated, Plaintiff is now without a forum in which to prosecute her claims. *See Noble*, 2022 WL 1099006, at *2 ("There is no arbitration to return this case to and parties may not avoid resolution of live claims through compelling a new arbitration proceeding after having let the first arbitration proceeding fail."). As stated by the Southern District of Florida in *Garcia*:

> Faced with this record, the Court could simply scoff at the problem, deny the motion [to reopen], and force the Plaintiff to try again to get the Defendant to abide by its contractual responsibilities. But the question that must first be answered is why? Why under these circumstances, when the Plaintiff claims that he has a statutory right to seek relief under the laws of the United States, would a federal court turn him aside again in favor of arbitration when the party who demanded that arbitration in the first place so cavalierly ignored Plaintiff's right to speedy resolution of statutory claims when the Court's eyes looked elsewhere? To ask the question is to answer it. The right answer, then, is to grant this motion.

*Garcia*, 2010 WL 3259922, at *1. Accordingly, this Court should grant Plaintiff's motion and reopen this litigation.

### III.  CONCLUSION

Defendant initiated arbitration of this matter. In the arbitration, Defendant repeatedly and consistently failed to timely pay its portion of the required costs and fees. As a result, the arbitration was terminated. Plaintiff has suffered significant prejudice due to Defendant's dilatory conduct. Accordingly, the Court should grant Plaintiff's Motion to Reopen the Litigation.

Dated: May 3, 2022.

                                      Respectfully submitted,

*/s/    Kerry A. Murphy*
Kerry A. Murphy, La. Bar No. 31382
Laura E. Avery, La. Bar No. 35636
Kerry Murphy Law LLC
715 Girod Street, Suite 250
New Orleans, Louisiana 70130
(504) 603-1502 (ph)
Email:  kmurphy@kerrymurphylaw.com
        lavery@kerrymurphylaw.com

Gregg C. Greenberg, Esq.
Admitted by *Pro Hac Vice*
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
(301) 587-9373 (ph)
Email:  GGreenberg@ZAGFirm.com

*Counsel for Plaintiff and the Class/Collective*