IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

LAUREN KIKUCHI AND　　　　　　　　\*
PRISCILLA CISNEROS,　　　　　　　　\*
*On Behalf of Themselves*　　　　　　\*
*And Others Similarly Situated*　　　　\*
　　　　　　　　　　　　　　　　\*　　Case No.:  20-cv-2764
　　　Plaintiff,　　　　　　　　　\*
　　　　　　　　　　　　　　　　\*
　v.　　　　　　　　　　　　　　\*
　　　　　　　　　　　　　　　　\*　　JUDGE:  Jane Triche Milazzo
SILVER BOURBON, INC. d/b/a SCORES　\*
FRENCH QUARTER, TEMPTATIONS, INC.　\*
d/b/a STILLETO'S CABARET, TEMPTATIONS,　\*
INC. d/b/a STILLETO'S CABARET, FAMOUS　\*　MAGISTRATE JUDGE:  Janis Van
BOURBON MANAGEMENT GROUP, INC.　\*　Meerveld
N'AWLINS ENTERTAINMENT GROUP, INC.,　\*
GUY OLANO, JR., GUY OLANO, III, AND　\*
RAYMOND PALAZZOLO　　　　　　\*
　　　　　　　　　　　　　　　　\*
　　　DEFENDANTS.　　　　　　　\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## FIRST AMENDED COLLECTIVE ACTION COMPLAINT

Plaintiffs Lauren Kikuchi ("Kikuchi") and Priscilla Cisneros ("Cisneros") (together, "Plaintiffs"), individually and on behalf of other similarly situated individuals, hereby file this First Amended Collective Action Complaint against Defendants Silver Bourbon, Inc. ("Silver Bourbon"), Temptations, Inc. ("Temptations"), Famous Bourbon Management Group, Inc. ("Famous Bourbon"), N'Awlins Entertainment Group, Inc. ("N'Awlins"), Guy Olano, Jr., Guy Olano, III, and Raymond Palazzolo (together, "Defendants"), and herein seek individual and class-wide recovery of unpaid wages, statutory liquidated damages, and attorney's fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), as set forth below.

## PARTIES AND JURISDICTION

1.　　Kikuchi is an individual residing in River Ridge, Louisiana, who previously resided in Metairie, Louisiana.

2.    Cisneros is an individual residing in Cantonment, Florida who previously resided in Arabi, Louisiana.

3.    During the period relevant to this action, Plaintiffs were employed by Defendants to work or perform as exotic dancers at or in Defendants' Scores Gentlemen's Club, located on Bourbon Street in New Orleans, Louisiana.

4.    During the period relevant to this action, Plaintiffs were employed by Defendants to work or perform as exotic dancers at or in Defendants' Stiletto's Cabaret, located on Bourbon Street in New Orleans, Louisiana.

5.    Silver Bourbon is a corporation formed under the laws of Louisiana, authorized to and doing business in Orleans Parish, Louisiana as Scores Gentlemen's Club, a strip club located at 416 Bourbon Street, New Orleans, Louisiana 70130.

6.    Temptations is a corporation formed under the laws of Louisiana, authorized to and doing business in Orleans Parish, Louisiana as Stiletto's Cabaret, located at 325 Bourbon Street, New Orleans, Louisiana 70130.

7.    Famous Bourbon is a corporation formed under the laws of Louisiana, authorized to and doing business in Jefferson Parish, Louisiana and located at 222 London Avenue, Suite 100, Metairie, Louisiana 70005.

8.    N'Awlins is a corporation formed under the laws of Louisiana, authorized to and doing business in Jefferson Parish, Louisiana and located at 222 London Avenue, Suite 100, Metairie, Louisiana 70005.

9.    Guy Olano, Jr., is an adult residing at 244 Helios Avenue, Metairie, Louisiana 70005. During the period relevant to this action, Guy Olano, Jr. has held a substantial ownership and/or financial interest Silver Bourbon, Temptations, Famous Bourbon, and N'Awlins.

2

10.     During the period relevant to this action, Guy Olano, Jr., participated substantially in the administration, operations, and management of Defendants' Scores Gentlemen's Club and Defendants' Stiletto's Cabaret, both located on Bourbon Street in New Orleans.

11.     Guy Olano, III, is an adult residing at 1714 Hesiod Street, Metairie, Louisiana 70005. During the period relevant to this action, Guy Olano, III, has held a substantial ownership and/or financial interest in Silver Bourbon, Temptations, Famous Bourbon, and N'Awlins.

12.     During the period relevant to this action, Guy Olano, III, participated substantially in the administration, operations, and management of Defendants' Scores Gentlemen's Club and Defendants' Stiletto's Cabaret, both located on Bourbon Street in New Orleans.

13.     Raymond Palazzolo is an adult residing at 1312 Velma Street, Metairie, Louisiana 70001.  During the period relevant to this action, Raymond Palazzolo has held a substantial ownership and/or financial interest in Silver Bourbon, Temptations, Famous Bourbon, and N'Awlins.

14.     During the period relevant to this action, Raymond Palazzolo participated substantially in the administration, operations, and management of Defendants' Scores Gentlemen's Club and Defendants' Stiletto's Cabaret, both located on Bourbon Street in New Orleans, Louisiana.

15.     Notwithstanding that Silver Bourbon, Temptations, Famous Bourbon, and N'Awlins are or were formed under the laws of Louisiana as separate legal entities, during the period relevant to this action, Defendants' Scores Gentlemen's Club and Defendants' Stiletto's Cabaret were centrally and commonly operated, administered, and controlled by Guy Olano, Jr., Guy Olano, III, and Raymond Palazzolo as a single business operation.

16.     At all times relevant to this action, Defendants owned and operated Defendants' Scores Gentlemen's Club and Defendants' Stiletto's Cabaret for a common business purpose, to wit, as nightclubs located on Bourbon Street in New Orleans, featuring live performances of nude and semi-nude exotic dancers.

17.     During the period relevant to this action, Defendants used and continue to use a common bookkeeper and payroll system for their operation of Defendants' Scores Gentlemen's Club and Defendants' Stiletto's Cabaret.

18.      During the period relevant to this action, all Defendants operated collectively as a single integrated employer under the FLSA, controlling and directing the employment of Plaintiffs and all other current or former exotic dancers employed by Defendants to work or perform in or at Defendants' Scores Gentlemen's Club and/or Defendants' Stiletto's Cabaret.

19.     During the period relevant to his action, all Defendants qualified employers or joint employers under the FLSA for Plaintiffs and all other exotic dancers working or performing in or at Defendants' Scores Gentlemen's Club and Defendants' Stiletto's Cabaret.

20.     During the period relevant to this action, Guy Olano, Jr., Guy Olano, III, and Raymond Palazzolo each qualified as individual employers or joint employers under the FLSA for Plaintiffs and all other current or former exotic dancers employed by Defendants to work or perform in or at Defendants' Scores Gentlemen's Club and/or Defendants' Stiletto's Cabaret, because as owners, officers, and/or managers of or for Silver Bourbon, Temptations, Famous Bourbon, and N'Awlins, Guy Olano, Jr., Guy Olano, III, and Raymond Palazzolo:

(i)     Each participated substantially in classifying Plaintiffs and all other exotic dancers working or performing in or at Defendants' Scores Gentlemen's Club and Defendants' Stiletto's Cabaret as non-employee contractors;

(ii)     Each participated substantially in decision to pay no wages at all for hours worked to Plaintiffs and all other exotic dancers working or performing in or at Defendants' Scores Gentlemen's Club and Defendants' Stiletto's Cabaret;

(iii)    Each participated substantially setting and enforcing all rules, policies, and practices related to or affecting the work and work environment for Plaintiffs and all other exotic dancers working or performing at Defendants' Scores Gentlemen's   Club and Defendants' Stiletto's Cabaret;

(iv)    Each had the power to hire, discipline, and fire Plaintiffs and all other exotic dancers working or performing at or in Defendants' Scores Gentlemen's Club and Defendants' Stiletto's Cabaret;

(v)     Each had the power to manage and/or supervise the work schedules and/or work conditions for Plaintiffs and all other exotic dancers that worked or performed in or at Defendants' Scores Gentlemen's Club and Defendants' Stiletto's Cabaret; and

(vi)    Each was responsible for maintaining employment records and related documents relating to performances and/or work duties performed by Plaintiffs and all other exotic dancers that worked or performed in or at Defendants' Scores Gentlemen's Club and Defendants' Stiletto's Cabaret.

21.     During the relevant period, Defendants had gross revenue and sales exceeding $500,000.00, sold beer, wine, spirituous beverages, colas, and food that passed in interstate commerce and otherwise qualified as an "enterprise engaged in commerce" under the FLSA.

22.     This Court has personal jurisdiction over the Defendants because during the period relevant to this action, Defendants Silver Bourbon, Temptations, Famous Bourbon,

5

N'Awlins conducted business in this District and Defendants Olano, Jr., Olano III, and Palazzolo resided in and conducted business in this District.

23.     This Court has subject matter jurisdiction over this matter because Plaintiff brings claims under the FLSA, a federal statute that provides a basis for "federal question" subject matter jurisdiction of the claims pursuant to 28 U.S.C. sec. 1331.

24.     Based on the foregoing, venue is proper in this District pursuant to 28 U.S.C. § 1391.

## PROCEDURAL HISTORY

25.     On October 8, 2020, Kikuchi filed her Class and Collective Action Complaint against Defendant Silver Bourbon in this Court. R. Doc. 1 (the "Original Complaint").

26.     Kikuchi's proposed Class and Collective was composed of female employees who worked as exotic dancers at Defendants' Scores Gentlemen's Club.

27.     In the Original Complaint, Kikuchi alleged Silver Bourbon misclassified Kikuchi and all the other exotic dancers working at Scores Gentlemen's Club as independent contractors when Kikuchi and all of the other exotic dancers should have been classified as employees and, as a result, that Silver Bourbon unlawfully deducted and assigned wages, tips, and gratuities belong to Kikuchi and other members of the class and collective and failed to pay Kikuchi and all other members of the Class and Collective minimum wage compensation in violation of the FLSA and the Louisiana Wage Payment Act (LWPA).

28.     On November 12, 2020, Kikuchi filed a Motion for Notice to Potential Plaintiffs and for Conditional Certification. R. Doc. 11.

29.     On November 24, 2020, Silver Bourbon filed a Motion to Dismiss pursuant to Rule 12(b)(3). R. Doc. 12.

30.     The sole basis for Silver Bourbon's Motion was that Kikuchi had executed an agreement at the onset of her employment with Silver Bourbon that contained an arbitration clause. R. Doc. 12-1.

31.     Kikuchi filed her Opposition to the Motion to Dismiss on December 1, 2020, arguing that Silver Bourbon failed to demonstrate that a valid and enforceable arbitration contract existed between Kikuchi and Silver Bourbon, as Silver Bourbon was not a party to the agreement. R. Doc. 14.

32.     This Court ordered supplemental briefing addressing whether the theories of agency and third-party beneficiary allowed Silver Bourbon to enforce the agreement against Kikuchi. R. Doc. 28.

33.     Kikuchi and Silver Bourbon submitted the requested supplemental briefing. R. Doc. 29 and R. Doc. 30.

34.     On June 1, 2021, this Court found that a valid arbitration agreement existed, held that Kikuchi's claims fell within the scope of that agreement, and entered an Order granting the Motion to Dismiss without prejudice. R. Doc. 31.

35.     In the Court's June 1, 2021, Order, the Court held that N'Awlins "had actual express authority to enter into the [arbitration agreement] on behalf [of] Defendant [Silver Bourbon] and that the nature of this agency relationship was disclosed to [Kikuchi]." *Id.* at 10-11.

36.     The Court cited the language of the arbitration agreement, which "state[d] that '[t]his agreement is made and entered into . . . after negotiations by and between [N'Awlins] Individually and on behalf of its member clubs: Scores New Orleans, Temptations, Stiletto's,

Lipstixx, Centerfolds, Scores West, and the Rainbow Room and [the Dancer].'" *Id*. at 11 (citing R. Doc. 12-2 at 2).

37.     On July 1, 2021, Plaintiffs' undersigned counsel filed four (4) separate arbitration complaints with the American Arbitration Association ("AAA") (collectively, the "Arbitration Complaints"):

> (i)     Cisneros v. Famous Bourbon; Temptations, N'Awlins, Guy Olano, Jr., Guy Olano, III, and Scott Yaffee;
>
> (ii)    Cisneros v. Famous Bourbon, Silver Bourbon, N'Awlins, Guy Olano, Jr., Guy Olano, III, and Scott Yaffee;
>
> (iii)   Kikuchi v. Famous Bourbon, Temptations, N'Awlins, Guy Olano, Jr., Guy Olano, III, and Scott Yaffee; and
>
> (iv)    Kikuchi v. Famous Bourbon, Silver Bourbon, N'Awlins, Guy Olano, Jr., Guy Olano, III, and Scott Yaffee. For purposes of this section, Famous Bourbon, Silver Bourbon, N'Awlins, Temptations, Guy Olano, Jr., Guy Olano, III, and Scott Yaffee are hereafter referred to as the "Arbitration Defendants".

38.     On or about October 6, 2021, the Parties agreed to consolidate Kikuchi and Cisneros' four (4) arbitration complaints into a single arbitration action before the AAA.

39.     Plaintiffs fully paid their share of all of the AAA administrative fees and/or Arbitrator fees required by the AAA.

40.      On March 21, 2022, the AAA sent correspondence to the Arbitration Defendants noting that its records indicated that the Arbitration Defendants owed AAA a total outstanding balance of $5,625 in various AAA administrative and Arbitrator fees.

41.     On April 11, 2022, the Arbitrator issued an Order suspending the arbitration due to the Arbitration Defendants' nonpayment in accordance with the AAA Commercial Rules and, in so doing, warned the Arbitration Defendants that if they failed to immediately pay all outstanding AAA administrative and Arbitrator fees, the AAA would terminate the arbitration.

42.     The Arbitration Defendants did not respond to the AAA's suspension or warning and failed and refused to pay AAA its requested administrative and/or Arbitrator fees.

43.     On April 27, 2022, the AAA entered an order officially terminating the arbitration due to the Arbitration Defendants' nonpayment of various fees after multiple warnings, reminders, and extensions.

44.     On May 3, 2022, Kikuchi filed a Motion with tis Court to re-open this case, noticing it for submission on May 18, 2022. R. Doc. 33.

45.     Silver Bourbon failed to oppose or otherwise timely respond to Kikuchi's Motion.

## KIKUCHI'S WORK AT SCORES

46.     During the period of about 2012 through about March 2020, Kikuchi consistently worked and was employed by Defendants as an exotic dancer at Defendants' Scores Gentlemen's Club.

47.     From about 2017 through 2020, Kikuchi worked a customary schedule at Defendants' Scores Gentlemen's Club of about three (3) to five (5) shifts per week at Scores that included Wednesday, Thursday, Friday, Saturday, and/or Sunday.

48.     During the period 2017 through 2020, Kikuchi's typical work schedule at Defendants' Scores Gentlemen's Club was Weekdays (Sunday through Wednesday), from about 8:00 P.M. through about 3:30 A.M. and weekends (Thursday through Saturday), from about 8:00 P.M. through about 6:00 A.M.

9

49.     While employed at Defendants' Scores Gentlemen's Club, Defendants' "House Mom" was in charge of making sure Kikuchi was ready, and fully dressed in compliance with Defendants' dancer dress code.

50.     While employed at Defendants' Scores Gentlemen's Club, around the time Kikuchi checked in with Defendants' "House Mom," Kikuchi's name was written into a sign in sheet by Defendants' "House Mom," and Kikuchi was then required to check in with Defendants' DJ to have her name put on the stage rotation list.

51.     While employed at Defendants' Scores Gentlemen's Club, Defendants required Kikuchi to pay a per shift "House Fee" directly to Defendants' management in the amount of about $20.00 - $60.00 per shift (for weekdays) and $75.00 - $100.00 (for weekends).

52.     While employed at Defendants' Scores Gentlemen's Club, Defendants also required Kikuchi to pay Defendants $10.00 for each dance Kikuchi performed for Defendants customers and Kikuchi was required to pay Defendants 20% from the total sum the customer paid Kikuchi for private rooms.

53.     While employed at Defendants' Scores Gentlemen's Club, Defendants required Kikuchi pay a "tip out" of $10.00-$20.00 to Defendants' house mom; $5.00-$20.00 to Defendants' security guards; and $5.00-$20.00 to the Defendants' "door guy."

54.     At all times Kikuchi was employed by Defendants as an exotic dancer at Defendants' Scores Gentlemen's Club, the only money Kikuchi earned or received was in the form of tips Kikuchi received from customers for dancing on stage, interacting on the floor, selling drinks, and performing private and semi-private dances.

55.     At all times Kikuchi was employed by Defendants as an exotic dancer at Defendants' Scores Gentlemen's Club, Defendants classified Kikuchi as a non-employee contractor and paid Kikuchi no wages or other compensation for hours worked.

## KIKUCHI'S WORK AT STILETTO'S

56.     From about 2013 through about 2020, Kikuchi consistently worked and was employed by Defendants as an exotic dancer at Defendants' Stiletto's Cabaret.

57.     During the period of about 2013 through about 2020, Kikuchi typically worked about two (2) or three (3) (and occasionally more) shifts per week at Defendants' Stiletto's Cabaret, including shifts on weekdays on Mondays, Tuesdays and Wednesdays, from about 8:00 P.M through about 3:30 A.M.

58.     While employed at Defendants' Stiletto's Cabaret, Kikuchi customarily commenced her shift by checking in with Defendants' DJ after getting dressed, who put Kikuchi's name on the list to be on the stage rotation.

59.     While employed at Defendants' Stiletto's Cabaret, Defendants required Kikuchi to pay Defendants' managers a shift "House Fee" kickback and confirmed Kikuchi's payment of the "house fee" kickback on a daily attendance paper.

60.     While employed at Defendants' Stiletto's Cabaret, Defendants required Kikuchi to pay Defendants a $40.00 per shift "House Fee" to work each shift.

61.     While employed at Defendants' Stiletto's Cabaret, Defendants required Kikuchi to pay Defendants' club security and the door guy $5.00-$10.00 and pay Defendants' DJ 10% of the tips she received from Defendants' customers each shift.

62.     At all times Kikuchi was employed by Defendants as an exotic dancer at Defendants' Stiletto's Cabaret, the only money Kikuchi earned or received was in the form of

tips from customers for dancing on stage, interacting on the floor with customers, selling drinks, and performing private and semi-private dances.

63.     At all times Kikuchi was employed by Defendants as an exotic dancer at Defendants' Stiletto's Cabaret, Defendants classified Kikuchi as a non-employee contractor and paid Kikuchi no wages or other compensation for hours worked.

### CISNEROS' WORK AT SCORES

64.     During the period of about 2010 through about March 2020, Cisneros consistently worked and was employed by Defendants as an exotic dancer at Defendants' Scores Gentlemen's Club.

65.     From about 2017 through March 2020, Cisneros' customary work schedule at Defendants' Scores Gentlemen's Club was about three (3) to five (5) shifts per week, each shift lasting between six (6) to eight (8) hours, for a total of about eighteen (18) to thirty (30) hours per week.

66.     While employed at Defendants' Scores Gentlemen's Club, Defendants' "House Mom" was in charge of making sure Cisneros was ready and fully dressed in compliance with Defendants' dancer dress code.

67.     While employed at Defendants' Scores Gentlemen's Club, around the time Cisneros checked in with Defendants' "House Mom," Cisneros' name was written into a sign in sheet by Defendants' "House Mom," and then Cisneros was required to check in with Defendants' DJ to have her name put on the stage rotation list.

68.     While employed at Defendants' Scores Gentlemen's Club, Defendants required Cisneros to pay a per shift "House Fee" directly to Defendants' management in the amount of about $20.00 - $60.00 per shift (for weekdays) and $75.00 - $100.00 (for weekends).

12

69.     While employed at Defendants' Scores Gentlemen's Club, Defendants also required Cisneros to pay Defendants $10.00 for each dance Cisneros performed for Defendants customers and Cisneros was required to pay Defendants 20% from the total sum the customer paid Cisneros for private rooms.

70.     While employed at Defendants' Scores Gentlemen's Club, Defendants required Cisneros pay a "tip out" of $10.00-$20.00 to Defendants' "House mom"; $5.00-$20.00 to Defendants' security guards; and $5.00-$20.00 to the Defendants' "door guy."

71.     At all times Cisneros was employed by Defendants as an exotic dancer at Defendants' Scores Gentlemen's Club, the only money Cisneros earned or received was in the form of tips from customers for dancing on stage, interacting on the floor, selling drinks, and performing private and semi-private dances.

72.     At all times Cisneros was employed by Defendants as an exotic dancer at Defendants' Scores Gentlemen's Club, Defendants classified Cisneros as a non-employee contractor and paid Cisneros no wages or other compensation for hours worked.

### CISNEROS' WORK AT STILETTO'S

73.     During the period of about April 2019 through about March 2020, Cisneros consistently worked and was employed by Defendants as an exotic dancer at Defendants' Stiletto's Cabaret.

74.     While employed by Defendants at Defendants' Stiletto's Cabaret, Cisneros customarily worked three (3) to five (5) shifts per week, each shift lasting between six (6) to eight (8) hours, for a total of about eighteen (18) to thirty (30) hours per week.

75.     While employed at Defendants' Stiletto's Cabaret, Cisneros customarily commenced her shift by checking in with Defendants' DJ after getting dressed and Defendants' DJ put Cisneros' name on the list to be on the stage rotation.

76.     While employed at Defendants' Stiletto's Cabaret, Defendants required Cisneros to pay Defendants' managers a shift "House Fee" kickback and confirmed Cisneros' payment of the "house fee" kickback on a daily attendance paper.

77.     While employed at Defendants' Stiletto's Cabaret, Defendants required Cisneros to pay Defendants a $40.00 per shift "House Fee" to work each shift.

78.     While employed at Defendants' Stiletto's Cabaret, Defendants required Cisneros to pay Defendants' club security and the door guy $5.00-$10.00 and pay Defendants' DJ 10% of the tips she received from Defendants' customers each shift.

79.     At all times Cisneros was employed by Defendants as an exotic dancer at Defendants' Stiletto's Cabaret, the only money Cisneros earned or received was in the form of tips from customers for dancing on stage, interacting on the floor, selling drinks, and performing private and semi-private dances.

80.     At all times Cisneros was employed by Defendants as an exotic dancer at Defendants' Stiletto's Cabaret, Defendants classified Cisneros as a non-employee contractor and paid Cisneros no wages or other compensation for hours worked.

## FACTS COMMON TO ALL MEMBERS OF THE COLLECTIVE

81.     During the period of Plaintiffs' employment, Defendants employed more than fifty (50) exotic dancers at Defendants' Scores Gentlemen's Club.

82.     During the period of Plaintiffs' employment, Defendants employed more than fifty (50) exotic dancers at Defendants' Stiletto's Cabaret.

83.     On information and belief, during the period of October 2017 through the present (the "Class Period"), Defendants have employed and continue to employ more than one hundred (100) current and former exotic dancers at Defendants' Scores Gentlemen's Club and/or Defendants' Stiletto's Cabaret (collectively, the "Collective").

84.     During the Class Period, Defendants misclassified Plaintiffs and the other members of the Collective as independent contractors when they should have been classified as employees under the FLSA.

85.     During the Class Period, Defendants failed to pay any wages or other compensation to Plaintiffs or the other members of the Collective for employment duties as exotic dancers at Defendants' Scores Gentlemen's Club and/or Defendants' Stiletto's Cabaret.

86.     During the Class Period, Defendants were required by the FLSA to pay wages to Plaintiffs and the other members of the Collective at an hourly rate at least equal to the free and clear Federal Minimum Wage ($7.25 per hour) for all hours worked by Plaintiffs and the other members of the Collective as exotic dancers for Defendants' benefit at Defendants' Scores Gentlemen's Club and/or Defendants' Stiletto's Cabaret.

87.     During the Class Period, for each shift Plaintiffs and the other members of the Collective worked as exotic dancers at Defendants' Scores Gentlemen's Club and/or Defendants' Stiletto's Cabaret, Defendants required Plaintiffs and the other members of the Collective to pay Defendants kickbacks and/or tip assignments ranging for "House Fees" and other charges and/or tip assignment payments to the Defendants' "House Mom," managers, security, DJ, and other assignees, as determined by Defendants.

88.    Defendants are in possession, custody, and control of time and/or sign in attendance records and "House Fee" and other tip assignment records for Plaintiffs and the other members of the Collective during the Class Period.

89.    During the Class Period, agents on behalf of Defendants had actual knowledge of all hours Plaintiffs and the other members of the Collective worked each shift at Defendants' Scores Gentlemen's Club and/or Defendants' Stiletto's Cabaret through sign in or tip-in sheets, DJ records, and shift-managers monitoring and supervising Plaintiffs and the other members of the Collective's exotic dancer work duties.

90.    During the Class Period, Defendants controlled the method by which Plaintiffs and the other members of the Collective could earn money at Defendants Scores Gentlemen's Club and/or Defendants' Stiletto's Cabaret Club by establishing dance orders, setting customer prices on private and semi-private exotic dances, and setting private and semi-private dance specials and promotions for customers.

91.    During the Class Period, Defendants required Plaintiffs and the other members of the Collective to perform private and semi-private dances at Defendants' Scores Gentlemen's Club and/or Defendants' Stiletto's Cabaret under the pricing guidelines, policies, procedures, and promotions set exclusively by Defendants.

92.    During the Class Period, Defendants hired Plaintiffs and the other members of the Collective to work as an exotic dancer at Defendants' Scores Gentlemen's Club and/or Defendants' Stiletto's Cabaret and had the authority and ability to discipline, fine, fire, Plaintiffs and the other members of the Collective and/or to adjust Plaintiffs' and/or each member of the Collective's work schedule.

93. During the Class Period, Defendants, through supervisors and managers, supervised the duties of Plaintiffs and the other members of the Collective at Defendants' Scores Gentlemen's Club and/or Defendants' Stiletto's Cabaret to make sure Plaintiffs and the other members of the Collective's job performance were of sufficient quality.

94. During the Class Period, Defendants conducted initial interviews and vetting procedures for Plaintiffs and the other members of the Collective and, at Defendants' sole discretion, Defendants' management and/or ownership could deny Plaintiffs and the other members of the Collective access to and/or the ability to dance and/or work at Defendants' Scores Gentlemen's Club and/or Defendants' Stiletto's Cabaret.

95. During the Class Period, Defendants had the right to suspend or send Plaintiffs and the other members of the Collective home from Defendants' Scores Gentlemen's Club and/or Defendants' Stiletto's Cabaret Club if Plaintiffs or other member(s) of the Collective violated Defendants' rules or policies or if Defendants' ownership or management, at its discretion, did not want Plaintiffs or any other the other member(s)s of the Collective at Defendants' Scores Gentlemen's Club and/or Defendants' Stiletto's Cabaret.

96. During the Class Period, Defendants did not require Plaintiffs or any other members of the Collective to have or possess any requisite certification, education, or specialized training as a condition of employment at Defendants' Scores Gentlemen's Club and/or Defendants' Stiletto's Cabaret.

97. During the Class Period, Defendants were in the business of operating multiple gentlemen's clubs, featuring nude and semi-nude female exotic dancers.

98. During the Class Period, it was Plaintiffs' and all other members of the Collective's primary job duty for Defendants to work and perform as exotic dancers for

17

Defendants' customers at Defendants' Scores Gentlemen's Club and Defendants' Stiletto's Cabaret.

99.     During the Class Period, Defendants regularly and customarily kept and/or assigned to management tips and gratuities that Plaintiffs and all other members of the Collective received from Defendants' customers at Defendants' Scores Gentlemen's Club and Defendants' Stiletto's Cabaret.

100.    Prior to and during the Class Period, Defendants had actual knowledge that exotic dancers like Plaintiffs and the other members of the Collective were Defendants' employees under the FLSA and were not independent contractors.

101.    Prior to and during the Class Period, Defendants had actual knowledge that Defendants were required under the FLSA to pay Plaintiffs and the other members of the Collective minimum wage compensation in compliance with the FLSA requirements.

102.    Prior to and during the Class Period, Defendants had actual or constructive knowledge that Defendants misclassified Plaintiffs and the other members of the Collective as independent contractors, failed to pay Plaintiffs and the other members of the Collective minimum wage compensation as required by the FLSA, unlawfully withheld or assigned tips Plaintiffs and the other members of the Collective received from Defendants' customers, and unlawfully charged Plaintiffs and the other members of the Collective kickbacks, fines, and surcharges.

103.    At all times relevant to this action, Defendants' failure to pay wages to Plaintiffs and the other members of the Collective was in direct violation of the FLSA.

104.   At all times relevant to this action, Defendants' practice and policy of charging kickbacks and taking portions of tips Plaintiffs and the other members of the Collective received from Defendants' customers was in direct violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

105.   Plaintiffs are pursuing this lawsuit as a collective action under Section 216(b) of the FLSA on behalf of themselves and all other similarly situated individuals who at any time during the relevant time period worked for Defendants as exotic dancers at Defendants' Scores Gentlemen's Club and/or Defendants' Stiletto's Cabaret, and were designated as independent contractors and were not paid minimum wage compensation as required by the FLSA (hereinafter, the "Collective").

106.   Plaintiffs and the members of the Collective are similarly situated because each was (1) improperly classified as independent contractors; (2) not paid any wages by Defendants for hours worked; (3) a victim of tip theft whereby Defendants kept and/or assigned to management her tips and gratuities received from customers; (4) required to pay per-shift house fees and/or kickbacks to Defendants for each shift worked; and (5) not paid wages at or above the Federal Minimum Wage of $7.25 for each hour worked.

107.   Plaintiffs' damages are substantially similar to other members of the Collective because, under the FLSA, each are owed (1) a return of all house fee kickback payments made to Defendants for each shift worked; (2) reimbursement of all tips and gratuities taken and/or assigned by Defendants and/or Defendants' management; (3) payment for all hours worked in an amount equal to the Federal Minimum Wage of $7/25 per hour; plus (4) statutory liquidated damages as provided by Federal law for Defendants' failure to pay minimum wage compensation as required by the FLSA.

19

## CAUSE OF ACTION

### VIOLATION OF THE FLSA –FAILURE TO
### PAY MINIMUM WAGE COMPENSATION

108.    Plaintiffs hereby incorporate all the preceding paragraphs by reference as if fully set forth herein.

109.    The FLSA provides that no employer shall employ any employee for an hourly wage of less than the Federal Minimum Wage, currently $7.25 per hour.

110.    The FLSA prohibits a taking or assignment by Defendants or its management or non-customarily tipped employees of tips or gratuities received by tipped employees from customers.

111.    The FLSA prohibits the charging by Defendants or its managers of kickbacks or similar fees as a condition of employment.

112.    As set forth above, Defendants failed to pay Plaintiffs and other similarly situated exotic dancers at hourly rates in compliance with the FLSA Federal Minimum Wage requirements.

113.    Without legal excuse or justification, Defendants kept and/or assigned to management, vendors, and non-tipped employees portions of the tips and gratuities received by Plaintiffs and other exotic dancers belonging to Plaintiffs and other exotic dancers.

114.    Defendants' failure to pay Plaintiffs and other similarly situated exotic dancers as required by the FLSA was intentional and was not in good faith.

### RELIEF SOUGHT

WHEREFORE, Plaintiffs pray for individual and class-wide relief as follows:

A.    An Order Certifying this matter as a Collective Action pursuant to FLSA Section 216(b).

B.   Judgment against Defendants, jointly and severally, for failing to pay free and clear minimum wage compensation to Plaintiff and the other members of the Collective as required by the FLSA;

C.   Judgment against Defendants, jointly and severally, for unlawfully taking and/or assigning tips and gratuities received by Plaintiff and the other members of the Collective from Defendants' customers in violation of the FLSA;

D.   Judgment against Defendants, jointly and severally, for unlawfully charging Plaintiff and the other members of the Collective kickbacks, fines, fees, and surcharges in violation of the FLSA;

E.   An award to Plaintiffs and the other members of the Collective in the amount of all free and clear unpaid wages found to be due and owing to Plaintiff and the other members of the Collective for the entirety of the Class Period;

F.   An award to Plaintiff and the other members of the Collective in the amount of all tips and gratuities unlawfully taken and/or assigned by Defendants for the entirety of the Class Period;

G.   An award to Plaintiffs and the other members of the Collective in the amount of the return of all kickbacks, fines, fees, and surcharges assessed against or otherwise taken from Plaintiff and the other members of the Collective for the entirety of the Class Period;

H.   An award of statutory liquidated damages in amounts prescribed by the FLSA;

I.   An award of attorneys' fees and costs to be determined by post-judgment petition;

J.   An award of pre-judgment interest; and

K.   Such further relief as may be necessary and appropriate.

21

Dated: May 24, 2022.

Respectfully submitted,

__/s/   *Kerry A. Murphy*_____
Kerry A. Murphy, La Bar No. 31382
Laura E. Avery, La Bar No. 35636
Kerry Murphy Law LLC
715 Girod Street, Suite 250
New Orleans, Louisiana 70130
(504) 603-1502 (ph)
Email:  kmurphy@kerrymurphylaw.com
         lavery@kerrymurphylaw.com

and

Gregg C. Greenberg, Esq.
Admitted by *Pro Hac Vice*
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
(301) 587-9373 (ph)
Email:  GGreenberg@ZAGFirm.com

*Counsel for Plaintiffs and the Collective*