UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LAUREN KIKUCHI, ET AL. | * | CIVIL ACTION NO. 20-2764 |
| | * | C/W NO. 20-2991 |
| VERSUS | * | |
| | * | SECTION: "H"(1) |
| SILVER BOURBON, INC. d/b/a SCORES | * | |
| GENTLEMEN'S CLUB, ET AL. | * | JUDGE JANE TRICHE MILAZZO |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is the defendants' Motion to Withdraw Admissions Pursuant to Rule 36(b). (Rec. Doc. 72). The Court held argument on the motion on February 15, 2023, and defendants were provided an opportunity to show that they had facts to support their denials. Although defendants have not fully complied with the Court's order, the Court finds that withdrawal of some, but not all, of the admissions is in the interest of presenting this case on the merits. Accordingly, and for the following reasons, the Motion to Withdraw Admissions is GRANTED in part and DENIED in part.

Background

These consolidated lawsuits were filed by current and former exotic dancers working or performing at certain commonly owned and operated and interrelated gentlemen's clubs in Louisiana. The plaintiffs assert claims on behalf of themselves and others similarly situated alleging misclassification of the dancers as independent contractors and failure of the defendant clubs to pay wages in compliance with the Fair Labor Standards Act. ("FLSA").

The Kikuchi plaintiffs filed their lawsuit first on October 8, 2020. The Clifton plaintiffs filed their lawsuit on November 4, 2020. The matters were consolidated on December 6, 2022. On

1

that same day, the District Court authorized the distribution of class notice pursuant to 29 U.S.C. § 216(b).

The present dispute concerns requests for admission served by the plaintiffs in the Clifton action on September 15, 2021, prior to consolidation. The Clifton defendants did not serve responses until over a year later on October 22, 2022. The Clifton defendants argue that to the extent the requests for admission were deemed admitted by their failure to timely serve responses, this Court should allow those admissions to be withdrawn because defendants' counsel was hospitalized and/or at home convalescing for a good portion of time in 2022 as a result of two separate surgeries. They argue further that the plaintiffs would not be prejudiced because the admissions deemed admitted in the Clifton matter will not apply to the Kikuchi plaintiffs' action. They also argue that the prejudice contemplated by Rule 36 relates to the difficulty a party may face in proving its case due to the unavailability of witnesses as a result of a sudden need to obtain evidence with respect to requests previously deemed admitted. They submit that such prejudice is not present here.

Plaintiffs oppose the motion. They argue that defendants have been delinquent in providing discovery responses in the Clifton matter, noting that the Court has previously ordered defendants to enroll new counsel to assist.[1] Further, they argue that defendants have been delinquent in the

---

[1] During a status conference with the District Judge on June 29, 2022, the Clifton plaintiffs raised the issue of defendants' outstanding responses to their October 2021 discovery requests. The District Judge ordered the defendants to supplement their discovery responses by July 1, 2022. Defendants failed to do so and the Clifton plaintiffs filed a motion to compel and for sanctions on July 12, 2022. Oral argument was set, but when defendants failed to oppose and the Court learned that defendants' counsel was in the hospital, the Court cancelled the hearing and held a video status conference. During that conference, the undersigned ordered that the defendants produce responses to all interrogatories and request for production that had not yet been responded to (21 of 28 sets of discovery) and supplement all previous responses to produce additional responsive documents that could be found and where appropriate provide more complete discovery responses. Defendants' counsel explained that the defendant businesses are not ongoing concerns. He also explained that he was suffering from paraplegia and would have to speak to his clients over the phone to obtain additional information. He suggested that 30 days to respond, instead of the 21 days proposed by plaintiffs' counsel, would be more reasonable. Because of the approaching deadline to file a motion to send notice to potential members of the collective action, the Court ultimately required supplementation within 14 days but that if defendants would be enrolling new counsel, the parties could meet and confer to set a new deadline.

Kikuchi matter by compelling the Kikuchi plaintiffs to arbitration and then refusing to participate in the arbitration, which ultimately resulted in the Court reopening the lawsuit. They submit that plaintiffs would be highly prejudiced if the admissions were deemed withdrawn because the defendants have failed to fully respond to their other discovery requests. They argue that the purpose of allowing withdrawal of admissions is to assist in the presentation of the merits of a matter. Here, they insist, because defendants have refused to provide the plaintiffs with information and documents that would speak to the merits, withdrawal of the admissions would only hinder plaintiffs' ability to present their case. They ask the Court to find that, unless defendants bring themselves into full compliance with their discovery obligations, withdrawing the deemed admissions would be highly prejudicial to the plaintiffs.

Plaintiffs urge the Court to consider the defendants' delay in seeking withdrawal of their admissions. Plaintiffs argue that defendants have failed to demonstrate diligence and failed to comply with the court's orders to enroll additional counsel. They submit that attorney Thomas Barbera also had an ethical obligation to withdraw when his physical condition materially impaired his ability to represent his clients. They argue that defendants have failed to explain why they could

---

The Court required that new counsel be enrolled by August 24, 2022. On August 25, 2022, plaintiffs filed a supplemental memorandum in support of their July 2022 motion to compel, reporting that no discovery responses were provided by August 17, 2022, as ordered. On August 22, 2022, one additional set of discovery responses was produced, but nothing else. Moreover, defendants had not enrolled new counsel as discussed during the status conference. The Court held oral argument on the motion to compel, and counsel for both parties participated. The Court took the motion under submission. During oral argument, defendants' counsel indicated that he had presented options for new counsel to his clients in light of his health issues, but that no decision had been made. He asked for additional time to discuss. The Court ordered that defendants enroll additional or substitute counsel by September 7, 2022, and that even if no new counsel was enrolled, Mr. Barbera must move to withdraw by September 7, 2022. On September 7, 2022, defendants sought an extension of time to enroll new counsel. The Court granted the extension, ordering that new counsel be enrolled by September 16, 2022. The Court warned that defendants' failure to do so would result in an order that as a sanction for repeated failures to produce discovery responses and enroll counsel to assist, defendants would be precluded from opposing any motion by plaintiffs to send collective action notice. No new counsel was enrolled and the Court granted the motion to compel and for sanctions, issuing the aforementioned sanction on October 3, 2022.

3

not have sought to withdraw the admission earlier in 2022, before their attorney's medical issues began.

Plaintiffs further argue that permitting defendants to withdraw their deemed admissions would not promote the presentation of the merits. They point out that defendants have not argued that the admissions are contrary to the record of the case or that they are no longer true because of changed circumstances. They argue that the facts support the admissions. Finally, plaintiffs argue that the admissions in Clifton should be deemed to apply in the Kikuchi matter as well because the cases have been consolidated for all purposes.

The Court held oral argument on the Motion to Withdraw Admissions on February 15, 2023. The Court held that "[d]efendants shall be allowed to withdraw their admissions, provided that they are able to present evidence in support of their denials." Rec. Doc. 84. The Court required that "each defendant shall produce to the plaintiffs a proposed response to the plaintiffs' requests for admission. For each proposed denial, the defendant shall cite with specificity the evidence in support of its denial." Id.  The Court further ordered that defendants were also required to produce such evidence, and to the extent the cited evidence was testimony, they were required to "produce detailed affidavits that include representations about the basis for the affiant's personal knowledge." Id.

Defendants produced the following by the Court ordered deadline: (1) A memorandum/letter of counsel asserting that they deny that the plaintiffs "as employees did not receive minimum pay" and arguing that the factors for determining how to classify a worker weigh in favor of finding that the plaintiffs were independent contractors and not employees; and (2) The affidavit of Guy W. Olano, Jr., who "was the compliance controller for Scores on Bourbon St.; Temptations on Bourbon St.; Scores on the West Bank; and Stilettos on Bourbon St." for the

4

relevant period. Olano attests that as a result of his position he was fully aware of the internal operations of each company. Not one defendant produced proposed responses to the requests for admission that "cite with specificity the evidence in support of its denial." In supplemental briefing it has become clear that defendants rely on the proposed responses to the requests for admission that they served in October 2022.

Plaintiffs argue that defendants failed to comply with the Court's order and have submitted confusing materials. Moreover, they argue that Olano's affidavit is conclusory and fails to establish his personal knowledge. They submit that the position of "compliance controller" is insufficient to establish personal knowledge. Furhter, even if he could speak to some matters from personal knowledge, they insist that he cannot possibly have personal knowledge about the dancers' actions and intentions. For example, they deny that he has personal knowledge to attest that the dancers could and did work at many clubs on Bourbon St., that they were always moving from club to club, that they trained on their own, or that they had their own credit card applications on their cell phones to process customer payments. Plaintiffs complain further that Olano's affidavit contains conclusory statements such as "the clock in and out times were always recorded." They argue that as a result of defendants' failure to comply with the Court's order, it is impossible to evaluate the application of the facts in the affidavit to defendants' proposed denials.

Defendants' response to plaintiffs' supplemental memorandum reasserts previous arguments about their counsel's illness in 2022. They submit that they essentially deny all requests that identified the dancers as employees who did not receive minimum pay. They argue that the requests for admission are identical for each of the defendants and that is "one reason they are listed for all Defendants." They then argue that the affidavit addresses the factors for determining a worker's classification. They note that they have produced the sign-in/sign-out sheets and the

agreements the dancers signed acknowledging they are independent contractors. They argue that they believe their letter and the affidavit comply with the Court's order. They insist that plaintiffs are independent contractors and not employees and that they should be allowed to withdraw their admissions because plaintiffs would not be prejudiced by the unavailability of any evidence.

Law and Analysis

1. *Requests for Admission and Withdrawal of Admissions*

Rule 36 provides that a party may request another party to admit or deny any matter within the scope of discovery that relates to "facts, the application of law to fact, or opinions about either." Id. R. 36(a)(1). A party's failure to timely respond to a request for admission results in the request being deemed admitted. Fed. R. Civ. Proc. 36(a)(3). This occurs by operation of law and does not require the filing of a motion. Giovanni v. Cain, No. CIV.A. 13-0566-BAJ-R, 2014 WL 2084895, at *2 (M.D. La. May 19, 2014).

Where a matter is deemed admitted under Rule 36, that admission is conclusive "unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). However, the admission "is not an admission for any other purpose and cannot be used against the party in any other proceeding." Id. To allow a withdrawal of an admission, the court must find that it 1) would promote the presentation of the case on its merits, but 2) would not prejudice the requesting party in maintaining or defending the action on the merits. Id.; In re Carney, 258 F.3d 415, 419 (5th Cir. 2001).

"In considering whether the presentation of the merits will be facilitated by permitting an admission to be withdrawn, the court may look at whether the admission is contrary to the record of the case." N. La. Rehab. Ctr., Inc. v. United States, 179 F. Supp. 2d 658, 663 (W.D. La. 2001) (quoting Ropfogel v. United States, 138 F.R.D. 579, 583 (D. Kan. 1991)). The court may also find

withdrawal "appropriate in cases in which the admissions at issue directly bear on the merits of the case." Kansas City S. Ry. Co. v. Shan of Monroe LLC, No. 3:19-CV-01569, 2021 WL 1432918, at *2 (W.D. La. Mar. 18, 2021) (quoting Mendez v. Joeris Gen. Contractors, Ltd., No. CIV.A. SA-12-CA-0608, 2013 WL 3153982, at *3 (W.D. Tex. June 18, 2013)). Indeed, "[w]hen a material fact is clearly contested, considering that fact to be admitted precludes, rather than promotes, presentation of the case on the merits." Edeh v. Equifax Info. Servs., LLC, 295 F.R.D. 219, 224 (D. Minn. 2013); see Drs. Med. Ctr. of Modesto, Inc. v. Principal Life Ins. Co., No. 1:10-CV-00452, 2011 WL 831421, at *3 (E.D. Cal. Mar. 3, 2011) (observing that public policy favors "the disposition of cases on their merits rather than on technical violations of procedural rules").

The "prejudice" that the rule refers to "does not arise under Rule 36(b) simply because the party who initially obtained the admission will now have to convince the fact finder of its truth." Wild v. St. Tammany Par. Hosp. Serv. Dist. No. 1, No. CV 19-10931, 2021 WL 6446363, at *2 (E.D. La. Mar. 30, 2021) (quoting Express Lien, Inc. v. RoHillCo Bus. Servs., LLC, No. CIV.A. 13-4889, 2014 WL 1870621, at *2 (E.D. La. May 8, 2014))). Instead, it "relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." Le v. Cheesecake Factory Restaurants Inc., No. 06-20006, 2007 WL 715260, at *3 (5th Cir. Mar. 6, 2007) (quoting Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C., 930 F.2d 1117, 1120 (5th Cir. 1991)). Thus, a court may consider "the timing of the motion for withdrawal as it relates to the diligence of the party seeking withdrawal and the adequacy of time remaining for additional discovery before trial." Id.

> One court has observed that:
>
> While the loss to a party of his right to contest a matter on its merits is not to be treated lightly, where that loss results from the party's own failure to file an answer to requests for admission and further its failure to utilize the procedure provided in Rule 36 to rectify the deficiency, the loss is a casualty of the court's obligation to

process cases to disposition in an orderly, effective, expeditious manner and in accordance with its published rules.

O'Bryant v. Allstate Ins. Co., 107 F.R.D. 45, 48 (D. Conn. 1985).

   2. *Admissions at Issue Here*

As a preliminary matter, the Court finds that the plaintiffs' requests for admission are deemed admitted under Rule 36 as a result of defendants' failure to provide timely responses. Defendants make statements like "to the extent they are deemed admitted." However, failure to timely provide responses automatically results in the admission being deemed admitted. Giovanni, 2014 WL 2084895, at *2. In fact, the District Court already observed that the requests were deemed admitted in ruling on plaintiffs' motion for distribution of notice to collective action class members.

The Court now turns to the defendants' request to withdraw their deemed admissions. Finding the actual substance of the admissions critical to this determination, the Court ordered the defendants to produce a copy of the requests for admission and their proposed responses. There were two different forms. One form was sent to the company defendants: Silver Bourbon, N'Awlins Entertainment Group, and Manhattan Fashion. Another form was sent to Raymond Palozolla, Guy Olano, Jr., Guy Olano III, Joseph Ascani, and Scott Yaffee. With the exception of Olano III, see footnote 3, supra, the individuals' proposed responses are all the same as each other, and the companies' proposed responses are the same as each other. The proposed responses do include some admissions. For example, they admit that at least one dancer in the defendant clubs danced for patrons (#6), that at least one such dancer received tips from club patrons (#7), that the plaintiffs were classified as independent contractors (#29), and that the plaintiffs were not

employed in an executive capacity under the FLSA (#9).[2] The companies admit that they have the right to hire and fire the plaintiffs, though they note that plaintiffs are independent contractors (#21). The companies also admit that as a company-wide policy, they did not compensate any dancers for hours worked (#3),[3] that the plaintiffs received no compensation from Famous Bourbon for any hours worked at any establishment operated by Famous Bourbon (#16), and that plaintiffs received no compensation whatsoever from Famous Bourbon (#30), but in apparent conflict, the companies also deny that they did not compensate any dancers for hours worked (#8). The individual defendants admit that the plaintiffs were required to complete an employee application as a prerequisite to employment (#12), but the company defendants deny this (#22). The company defendants deny that plaintiffs made no financial investment in Famous Bourbon, but then state that plaintiffs made no financial investment in Bourbon Burlesque (#26).[4]

The individual defendants deny that they were properly named in the suit. The company defendants object that the meaning of "proper" is unknown. All defendants deny that the plaintiffs were their employees (#2), they deny that individuals that were not paid for hours worked were not exempt under the FLSA (#4), they deny that defendants employ exotic dancers throughout Texas (#5), they deny that any dancer was required to share her tips with the defendants and other employees (#8),[5] they deny that plaintiffs were not employed by Famous Bourbon in an administrative or professional capacity (#10, #11), they deny that Famous Bourbon set the work schedule for each plaintiff (#12), they deny that the plaintiffs worked for Famous Bourbon for an indefinite and unfixed term (#13), they deny that Famous Bourbon never received any money

---

[2] The individuals' proposed responses are contradictory: they deny that plaintiffs were not employed in an executive capacity under the FLSA (#9).
[3] In direct conflict with this response, the individuals' proposed responses deny that they did not compensate any dancers for any hours worked (#3).
[4] The distinction between Famous Bourbon and Bourbon Burlesque is not clear.
[5] This is contradicted by the affidavits five of the Clifton plaintiffs submitted in support of their motion to distribute class notice.

9

investment from the plaintiffs as a condition of their employment (#14), they deny that each plaintiff was compensated exclusively through tips of customers of Famous Bourbon (#15), they deny that Famous Bourbon charges a fee per shift worked (#17), they deny that defendants' employees handle or sell goods produced out of state or moved in interstate commerce (#18), they deny that the defendant has at least $500,000 in annual gross volume of sales made or business done (#19), they deny that Famous Bourbon requires plaintiffs to share their tips with non-service employees who do not customarily receive tips (#20), they deny that Famous Bourbon provides the plaintiffs with music equipment and a performing stage (#23), they deny that Famous Bourbon requires each plaintiff to purchase her own uniform noting that no uniforms are required (#24), they deny that Famous Bourbon sets the prices dancers are to charge customers for dances (#25), they deny that Famous Bourbon fines plaintiffs if they fail to follow the schedule set by Famous Bourbon (#27), they deny that plaintiffs were hired as employees (#28 on company set and #13 on individual set), and they deny that plaintiffs were not compensated at the federally mandated minimum wage (#31 on company set and #16 on individual set).

In determining whether to allow defendants to withdraw their admissions and replace them with their proposed responses, the Court must consider whether doing so would promote the presentation of the case on its merits and would not prejudice the plaintiffs in maintaining the action on the merits. Where there is evidence contrary to the admission, it would not promote presentation of the case on the merits to consider that fact admitted. The purpose of the Court's February 2023 Order was to give the defendants an opportunity to show that evidence supports their denials such that it would promote the presentation of the case on the merits to allow the admissions withdrawn.

As plaintiffs rightly point out, defendants have failed to comply with the letter of the Court's order because they did not cite which evidence supports each of their proposed denials. Instead, they cite the Olano affidavit globally as supporting all of the denials.[6] Nonetheless, the Court has reviewed the affidavit and compared it against the defendants' proposed denials.[7] The Court finds as follows:

- Paragraph 31 of the affidavit supports the denial of Request #3 to each of the companies and Request #5 to the individuals.

- Paragraph 18 of the affidavit supports the denial of Request #8 (regarding dancers dividing tips) and Request #20 to the companies, and Request #8 to the individuals.

- Paragraph 5 of the affidavit supports denial of Request #12 to the companies.

- Paragraph 22 of the affidavit supports denial of Request #24 to the companies.

- Paragraph 12 of the affidavit supports denial of Request #25 to the companies.

- Paragraph 36 of the affidavit supports denial of Request #27 to the companies.

- Paragraph 29 of the affidavit supports denial of Request #31 to the companies and Request #29 to the individuals.

To be clear, the Court does not now opine that this evidence is conclusive or that, in the face of other evidence to be presented, it would ultimately be sufficient to fend off a motion for summary judgment in plaintiffs' favor. However, the Court finds the evidence sufficient to

---

[6] Among other things, plaintiffs argue that Olano's assertion that he was the compliance controller for the companies for the relevant periods and that he was fully aware of the internal operations of each company is insufficient to establish personal knowledge. They insist that the title of "compliance controller" does not clearly identify the basis of his knowledge. The Court disagrees and finds that Olano's title and assertion of awareness of internal operations is sufficient at this stage, especially considering that plaintiffs have themselves named Olano as a defendant based on his alleged role as the President of Famous Bourbon Management Group, Inc., and have identified him as the registered agent for that company. Plaintiffs will have the opportunity cross examine Olano regarding the extent of his personal knowledge during discovery.

[7] Defendants argue that they are in compliance with the Court's order because they have provided evidence to support their denials. The Court disagrees. But, considering that the purpose of the Court's order was to determine whether there was a factual basis for the proposed denials, the Court will consider the evidence Defendants have produced.

conclude that the withdrawal of the referenced admissions would promote the presentation of the case on the merits. Moreover, the Court finds the plaintiffs would not be prejudiced in maintaining or defending the action on the merits if they are required to prove these facts at trial. They have evidence from their own sources in support of their position on the aforementioned issues. And there is still ample time for additional discovery to be done, including the deposition of Olano if they wish to cross-examine him on his statements. They have highlighted no special difficulty they will face if required to address these issues on the merits. Accordingly, the automatic admission of only the aforementioned requests shall be withdrawn and replaced with defendants' denials.

A number of other Requests for Admission go farther than seeking the application of law to fact. They seek ultimate legal conclusions central to this case. See Warnecke v. Scott, 79 F. App'x 5, 6 (5th Cir. 2003) ("[R]equests for admissions are properly used for facts or facts as applied to law, not pure legal conclusions . . . ."). For example, they ask defendants to admit that the plaintiffs were employees. The Court finds it would not promote the presentation of this case on the merits for such a core issue to be decided based on a request for admission that was deemed admitted. Defendants purport to have at least some evidence in support of their position, and the Court finds it in the interest of justice that the plaintiffs' status as employees be decided based on the evidence. Again, the Court finds no prejudice to the plaintiffs in having to address these central legal issues on the merits. The Court therefore finds that the admissions to the following requests shall be withdrawn: Requests #2 and #28 to the companies and Requests #2, #4, and #13 to the individuals.

As to the remaining requests, the Court finds the defendants have presented no evidence in support of denial. Accordingly, the Court finds that withdrawal would not promote the presentation of the case on the merits. The automatic admissions of the following requests are not withdrawn:

Requests #8, #13, #14, #15, #16, #17, #18, #19, #22, #23, and #26 to the companies and Requests #2, #3, #9, #10, #11, and #15 to the individuals.

The parties dispute whether the defendants' admissions to the requests for admission served in the Clifton matter will operate as admissions in the Kikuchi matter with which it has been consolidated. The Court finds that they do. As plaintiffs point out, when actions are consolidated, they merge into a single action for many purposes. See Ringwald v. Harris, 675 F.2d 768, 771 (5th Cir. 1982). Importantly, here, the matters are not simply consolidated, they are also part of the same collective action with a single definition of similarly situated plaintiffs.[8] For the purposes of this collective action, the named plaintiffs in the Kikuchi complaint cannot be considered part of an "other proceeding" where the defendants' admissions would not apply. See Fed. R. Civ. P. 36(b). Accordingly, the defendants' affirmative and automatic admissions apply to all plaintiffs in this consolidated action.

## Conclusion

For the foregoing reasons, the defendants' Motion to Withdraw Admissions Pursuant to Rule 36(b) (Rec. Doc. 72) is GRANTED in part and DENIED in part as further provided herein.

New Orleans, Louisiana, this 15th day of May, 2023.

_____
Janis van Meerveld
United States Magistrate Judge

---

[8] Indeed, in the motion to consolidate cases that was filed jointly by the Clifton and Kikuchi plaintiffs and which was not opposed by the defendants, the Kikuchi plaintiffs asserted that they each fully meet the FLSA Section 216(b) Collective Action Class definition sought by the Clifton plaintiffs. Rec. Doc. 62-1, at 6. As the plaintiffs observed, "[c]onsolidation of the Kikuchi Matter into the Clifton Matter at this time can be easily accomplished and will effectively treat the Kikuchi Plaintiffs as FLSA opt-in plaintiffs in the Clifton Matter." Id.