## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KELLY CLIFTON ET AL.**                    CIVIL ACTION

**VERSUS**                                  No: 20-2764 c/w
                                            20-2991

**FAMOUS BOURBON MANAGEMENT**
**GROUP, INC. ET AL.**                      SECTION "H"

## ORDER AND REASONS

Before the Court is Plaintiffs' Motion for Partial Summary Judgment (Rec. Doc. 128). For the reasons set forth herein, the Motion is **GRANTED IN PART** and **DENIED IN PART.** While Plaintiffs have satisfied their burden of proving that they are "employees" within the meaning of the FLSA, Plaintiffs have not shown that each Defendant is an "employer" within the meaning of the FLSA such that Defendants are liable under same.

## BACKGROUND

### 1. Factual Background

These consolidated lawsuits were filed by current and former exotic dancers working or performing at certain allegedly commonly owned and operated and interrelated gentlemen's clubs in Louisiana, including Stiletto's Cabaret (Stiletto's), Scores French Quarter, and Scores West (collectively, the "Clubs").[1] The Kikuchi plaintiffs filed their lawsuit first on October 8, 2020.[2]

---

[1] Rec. Doc. 114 at 1; Rec. Doc. 62-1 (Kikuchi).
[2] *Id.*

The Clifton plaintiffs filed their lawsuit on November 4, 2020.[3] The matters were consolidated on December 6, 2022.[4] On that same day, this Court authorized the distribution of class notice pursuant to 29 U.S.C. § 216(b).[5] There are seventy-eight Plaintiffs in this collective action, and the opt-in period has closed.[6]

Plaintiffs assert claims on behalf of themselves and others similarly situated against Defendants, alleging misclassification of the dancers as independent contractors and failure of Defendants to pay wages in compliance with the Fair Labor Standards Act ("FLSA").[7]

Plaintiffs name the following entities as Defendants: Famous Bourbon Management Group, Inc. ("Famous Bourbon"); Manhattan Fashion, LLC d/b/a Scores West ("Manhattan Fashion"); Silver Bourbon, Inc. d/b/a Scores French Quarter ("Silver Bourbon"); Temptations, Inc. d/b/a Stiletto's Cabaret ("Temptations"); and N'awlins Entertainment Group, Inc. ("N'awlins") (collectively the "Company Defendants").

Plaintiffs also name the following individuals as Defendants: Guy Olano, Jr., Joseph Ascani, Scott Yaffee, and Raymond Palazzolo (collectively the "Individual Defendants"). In their Complaints, Plaintiffs allege that Defendants each qualified as employers or joint employers under the FLSA for Plaintiffs and all other exotic dancers working or performing in the Clubs.[8]

## 2. Procedural History

### a. Defendants' failure to answer

---

[3] *Id.*

[4] *Id.*

[5] Rec. Doc. 67.

[6] Rec. Doc. 128-3 at 7.

[7] Rec. Doc. 128-3 at 7.

[8] Rec. Doc. 42 at ¶ 19 (Kikuchi); Rec. Doc. 9 at ¶¶ 29–37 (Clifton). The allegations as to the relationships between the Company Defendants, as well as between the Company and Individual Defendants, differ between the Clifton and Kikuchi Complaints. *See id.*

The record indicates that this litigation has been plagued with numerous delays. On February 17, 2021, after Defendants initially failed to file timely answers in the Clifton matter, the Court ordered that Plaintiffs move for entry of default as to certain defendants.[9] The Court also ordered Plaintiffs to show good cause why service of process had not been effected on certain other Defendants.[10] All Defendants except Scott Yaffee filed a joint Answer on March 30, 2021.[11] Defendant Scott Yaffee filed an Answer on May 24, 2021.[12]

In the Kikuchi matter, on August 31, 2022, the Court granted entry of default as to Defendants Silver Bourbon and Temptations.[13] Additionally, although they were named in the First Amended Collective Action Complaint in the *Kikuchi* matter, the record does not indicate that an answer was filed on behalf of Defendants N'awlins, Famous Bourbon, or Raymond Palazzolo.[14] No motion for entry of default as to these Defendants was ever filed.

### b. *Requests for admission*

On January 23, 2023, after Defendants failed to respond to certain requests for admission issued by the Clifton Plaintiffs, Defendants moved to withdraw "any Admissions to the exten[t] they were deemed admitted."[15] After oral argument, Magistrate Judge Van Meerveld held that "Defendants shall be allowed to withdraw their admissions, provided that they are able to present

---

[9] Rec. Doc. 21 (Clifton).

[10] *Id.*

[11] Rec. Doc. 26 (Clifton).

[12] Rec. Doc. 29 (Clifton).

[13] Rec. Doc. 128-3 at 9.

[14] The record indicates that the Answers were due on August 16, 2022 as to Defendant Raymond Palazzolo (Rec. Doc. 49) and Defendant Famous Bourbon (Rec. Doc. 50), and December 13, 2022 as to Defendant N'awlins (Rec. Doc. 56). Manhattan Fashion, Joseph Ascani, and Scott Yaffee were not named as Defendants in Kikuchi. *See* Rec. Doc. 42 (Kikuchi).

[15] Rec. Doc. 72 at 1. Except for Olano III, the Individual Defendants' proposed responses are all the same as each other, and the Company Defendants' proposed responses are the same as each other.

evidence in support of their denials."[16] The Court also ordered Defendants to produce evidence in support of its proposed denials.[17] In response, Defendants produced an affidavit from Guy W. Olano Jr., (the "Olano Affidavit"), who "was the compliance controller for Scores on Bourbon St.; Temptations on Bourbon St.; Scores on the West Bank; and Stilettos on Bourbon St."[18]

On May 15, 2023, Magistrate Judge van Meerveld granted in part Defendants' Motion to Withdraw and allowed Defendants to withdraw admissions as to ten requests issued to the Company Defendants and six requests as to the Individual Defendants.[19] All other requests were deemed admitted.[20] The Court further held that because the actions were not only consolidated, but "are also part of the same collective action with a single definition of similarly situated plaintiffs," Defendants' admissions applied all Plaintiffs in the instant action.[21]

### c. Instant Motion

On September 30, 2024, Plaintiffs filed this Motion for Partial Summary Judgment.[22] In their Motion, Plaintiffs maintain that Defendants "improperly classified Plaintiffs as 'independent contractors' rather than as employees." According to Plaintiffs, as a result, "Defendants failed to pay Plaintiffs minimum wage as required by [the FLSA], because their only compensation was in the form of tips received from Defendants' customers."[23]  Plaintiffs therefore move for partial summary judgment on the following issues: (1) Defendants violated the minimum wage requirement of the FLSA by

---

[16] Rec. Doc. 84.
[17] *Id.*
[18] Rec. Doc. 114 at 4.
[19] Rec. Doc. 114; Rec. Doc. 128-3 at 10.
[20] Rec. Doc. 114 at 11.
[21] *Id.* at 13.
[22] Rec. Doc. 128.
[23] Rec. Doc. 128-3 at 7.

misclassifying Plaintiffs as "contractors" when they were employees; and (2) Defendants are each liable as employers under the FLSA.[24] In support, Plaintiffs rely on Defendants' admissions as well as affidavits attached to their Motion.[25] Defendants did not file an opposition to Plaintiffs' Motion.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[26] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[27]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[28] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[29] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[30]

"In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence

---

[24] *Id.* at 8.
[25] *Id.*
[26] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[27] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[28] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[29] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[30] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[31] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[32]

The Court may not simply grant the instant Motion as unopposed. The Fifth Circuit approaches the automatic grant of dispositive motions with considerable aversion.[33] Instead, the proper inquiry to an unopposed motion for summary judgment is to determine whether the facts advanced in the motion and supported by appropriate evidence make out a prima facie case that the movant is entitled to judgment.[34]

## LAW AND ANALYSIS

Plaintiffs contend that Defendants misclassified Plaintiffs as "independent contractors," rather than employees under the FLSA. Plaintiffs aver that Defendants failed to pay them minimum wage as required under the FLSA. Plaintiffs rely on two types of evidence: affidavits from Plaintiffs Kelly Clifton[35] and Zoe Landry,[36] and certain requests for admissions which were previously deemed admitted by the Magistrate Judge.[37]

---

[31] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[32] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[33] See, e.g., Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc., 702 F.3d 794, 806 (5th Cir. 2012); Johnson v. Pettiford, 442 F.3d 917, 918 (5th Cir. 2006) (per curiam); John v. State of Louisiana (Bd. of Trs. for State Colls. and Univs.), 757 F.2d 698, 709 (5th Cir. 1985).

[34] See, e.g., Servicios Azucareros de Venezuela, C.A, 702 F.3d at 806.

[35] 128-5. Plaintiff Kelly Clifton contends that she was employed as an exotic dancer by Defendants at Stiletto's in New Orleans from approximately October 2016 until March 2020. Id. at ¶ 3.

[36] 128-6. Plaintiff Zoe Landry contends that she was employed as an exotic dancer by Defendants at Stiletto's Cabaret (Stiletto's), Scores French Quarter, and Scores West.

[37] Rec. Doc. 128-3.

Although Defendants did not respond to Plaintiffs' Motion, as stated above, the Motion is decided "on the basis of the record."[38] As such, this Court will examine the entirety of same, including Defendants' Motion to Withdraw and the Olano Affidavit attached thereto.[39]

### 1. Whether Plaintiffs Are "Employees" Under the FLSA

Here, the "threshold" question is whether Plaintiffs are employees under the FLSA, or whether Plaintiffs are independent contractors.[40] "The definition of employee under the FLSA is particularly broad."[41] As the United States Supreme Court has noted, the FLSA "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles."[42] As the Fifth Circuit has stated, "[t]o determine if a worker qualifies as an employee, we focus on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself."[43]

In considering whether the worker is "economically dependent" such that they may be considered an independent contractor, the Fifth Circuit has espoused the following, non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill

---

[38] E.D. La. L. R. 7.5; *see also* Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist., 308 F.3d 451, 471 (5th Cir. 2002) ("If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response.").

[39] Rule 56, however, "does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (internal quotations omitted).

[40] *See* Hopkins v. Cornerstone Am., 545 F.3d 338, 341 (5th Cir. 2008).

[41] *Id.* at 343 (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992)).

[42] *Id.* (quoting *Nationwide Mut. Ins. Co.*, 503 U.S. at 326).

[43] *Id.* (citing Herman v. Express Sixty–Minutes Delivery Serv., Inc., 161 F.3d 299, 303 (5th Cir. 1998)).

and initiative required in performing the job; and (5) the permanency of the relationship.[44] "No single factor is determinative."[45]

As Plaintiffs point out, numerous courts in this circuit have applied this test and concluded that that exotic dancers are employees covered by the FLSA.[46] On the other hand, the Fifth Circuit has, in a recent unpublished decision, affirmed a jury's finding that exotic dancers were not employees under the FLSA.[47] Regardless, because "the employment relationship is fact-intensive and case-specific" this Court will examine each factor in light of the record.

### a. Control

As to the degree of control exercised by the employer, the Fifth Circuit has explained that "[u]nder our economic-realities approach, '[c]ontrol is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity.'"[48] Thus, the court considers "whether the purported employee could exert independent control over meaningful aspects of his business life."[49]

Plaintiffs contend that whether the alleged employer (1) may hire and fire the alleged employee, (2) supervised and controlled work schedules and conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records is relevant to the analysis.[50] As described

---

[44] *Id.*

[45] *Id.* (citing Brock v. Mr. W Fireworks, Inc., 814 F.2d 1042, 1043–44 (5th Cir. 1987)).

[46] Rec. Doc. 128-3 at 13–16 (collecting cases).

[47] Nelson v. Tex. Sugars, Inc., 838 F. App'x 39, 42 (5th Cir. 2020).

[48] Eberline v. Media Net, L.L.C., 636 F. App'x 225, 227 (5th Cir. 2016) (quoting Hopkins v. Cornerstone Am., 545 F.3d 338, 343 (5th Cir. 2008)) (alterations in original).

[49] *Id.* (citing *Brock*, 814 F.2d at 1049).

[50] Rec. Doc. 128–3 at 17 (citing Williams v. Henagan, 595 F.3d 610, 620 (5th Cir. 2010); Watson v. Graves, 909 F.2d 1549, 1553 (5th Cir. 1990)).

below, however, this analysis is more appropriate to assess whether Defendants are employers.[51]

In *Reich v. Circle C. Investments, Inc.*, the Fifth Circuit affirmed the district court's finding that exotic dancers were employees of both the club and an individual who did not own the club.[52] As to the first factor in the analysis, the Fifth Circuit found that the nightclub's substantial control over its exotic dancers could be evidenced by the club's

> (1) requiring compliance with weekly work schedules, even with input from the dancers, (2) fining the dancers for absences and tardiness and rule violations, (3) instructing the dancers what to charge for dances, even if at the behest of the dancers, (4) setting minimum standards for dancers' costumes, (5) deciding the music, even when considering dancers' preferences, (6) expecting dancers to mingle with customers when not dancing, and (7) promulgating rules concerning the dancers' behavior.[53]

On the other hand, the alleged employee's "ability to adjust her own schedule, negotiate prices with customers, or keep whatever money was earned" weighs "in favor of independent contractor status."[54]

In *Johnson v. Houston KP, LLC*, the district court for the Southern District of Texas found that the control factor weighed in favor of classifying exotic dancers as employees where the defendants "maintained a significant degree of control over them in the form of setting policies and procedures," only allowing dancers "to work during operating hours," and "requiring dancers to pay a 'house fee,' all while maintaining the ability to terminate dancers at any time."[55]

---

[51] *See* Martin v. Spring Break 83 Prod., 797 F. Supp. 2d 719, 727 (E.D. La. 2011).

[52] 998 F.2d 324, 327 (5th Cir. 1993).

[53] Johnson v. N. Tex. Dancers, LLC, No. 7:20-cv-00116, 2021 WL 2077649, at *4 (N.D. Tex. May 24, 2021) (citing *Reich*, 998 F.2d at 327).

[54] *Id.* (quoting Nelson v. Tex. Sugars, Inc., 838 F. App'x 39, 42 (5th Cir. 2020)) (cleaned up).

[55] *Id.* at 744.

In the present case, Plaintiffs aver that the Clubs required them to complete an application and be interviewed.[56] They contend that each dancer was also required to be approved before working at the club.[57] Plaintiffs argue that after being hired, dancers were required to do the following: (1) pay a house fee to the club in order to work on a given day, (2) work at least four nights a week, and (3) work at least six hours per shift or otherwise pay a fee to leave their shift early.[58] Plaintiffs also state that the Clubs tracked their time.[59]

According to Plaintiffs, Defendants also controlled the price of dances by setting minimum prices and setting prices for certain services, such as private and VIP dances.[60] Plaintiffs also maintain that Defendants' written policies controlled how Plaintiffs could perform.[61] In affidavits, Plaintiffs maintain that they were required to share their tips with club employees and were threatened with termination or otherwise disciplined if they did not.[62] Plaintiffs also contend that Defendants controlled music selection, as well as club layout and lighting.[63]

On the other hand, while Defendants failed to respond to Plaintiffs' Motion, the record indicates that the Olano Affidavit, which was previously produced by Defendants, negates at least some of Plaintiffs assertions. Specifically, the Affidavit states that the Clubs did not "set schedules for the dancers,"[64] and that the Clubs "did not control: when the dancers worked; the

---

[56] 128-3 at 11.

[57] *Id.* at 12.

[58] *Id.*

[59] Rec. Doc. 128-6 at 8.

[60] Rec. Doc. 128-3 at 12.

[61] *Id.* The policies, however, appear to only address unlawful conduct. Rec. Doc. 78-10 (Clifton).

[62] Rec. Docs. 128-5 at 4; 128-6 at 4.

[63] *Id.*

[64] Rec. Doc. 110-2 at ¶ 5.

clothes or costumes they would wear; whether they had tattoos or piercings; whether they did stages or just worked on the floor."[65] The Affidavit also states that the dancers "set their own prices for lap dancing or VIP rooms," that many dancers "set their own fees and tips with the customers," and that "the dancers controlled her own music and lighting if desired." [66] The Affidavit states that the dancers were not fined "for leaving early," and that the Clubs "had no mandatory tip out policies for dancers to tip other workers at the Club."[67]

Whether this factor supports Plaintiffs' position is a close call. Nevertheless, the Olano Affidavit also states that there was a "mandatory procedure for a dancer to work at a club," to check in at the manager's desk and to declare tips, that the Clubs "set a rental fee for the room rental charge," that the "company had a right to hire and fire dancers for misbehaving," and that the dancers were required to "pay a house rental fee each night they worked."[68] Moreover, nothing in the record negates Plaintiffs' contention that they were required to work a certain amount of shifts per week or that Defendants controlled aspects of the Club such as lighting, advertising, and entertainer hiring. The Olano Affidavit also suggests that, with respect to at least some of the dancers, the Clubs set fees and tips.[69]

The Court finds that this factor weighs in favor of finding that Plaintiffs are employees under the FLSA. Just as in *Johnson*, although Plaintiffs appear to have enjoyed "certain freedoms" while working at the clubs, "the degree of control exerted" by the Clubs "reflects that frequently associated with an 'employer-employee' relationship."[70]

---

[65] *Id.* at ¶ 7.
[66] *Id.* at ¶¶ 9, 11, 27.
[67] *Id.* at ¶¶ 18, 23.
[68] *Id.* at ¶¶ 13, 15, 16, 29, 34.
[69] *Id.* at ¶ 11.
[70] *Johnson*, 588 F. Supp. 3d at 745.

### b. *Extent of relative investments of worker and alleged employer*

In applying the relative investment factor, "we compare each worker's individual investment to that of the alleged employer."[71] In *Johnson*, the district court found that this factor weighed in favor of a finding that the exotic dancers were employees where the plaintiffs' investment, was limited to "makeup and performance attire," and the defendants' investment "included advertising, monthly rent for the premises, alcohol, insurance, and other supplies."[72]

Here, Defendants admitted that Plaintiffs "have made no financial investment" with the Clubs.[73] Plaintiffs further aver that they made no investment or otherwise made any financial contribution to the operation of the Clubs, except for the nightly "buy in" amount.[74] Plaintiffs' affidavits also state that the only investments made by Plaintiffs were outfits and makeup.[75] On the other hand, the Olano Affidavit states that, in addition to wardrobes, Plaintiffs' investments included "business cards," "web pages," and "dancing and pole classes."[76] The Affidavit also indicates that many Plaintiffs invested in credit card applications on their cellphones and would process the customers' charges directly.[77]

As to the Clubs' investments, Plaintiffs argue that Defendants "paid for and were responsible for all costs and expenses associated with the operation" of the Clubs."[78] While Plaintiffs' affidavits state that Defendants "paid for all

---

[71] Hopkins v. Cornerstone Am., 545 F.3d 338, 344 (5th Cir. 2008) (emphasis removed).
[72] *Johnson*, 588 F. Supp. 3d at 745.
[73] Rec. Doc. 128-3 at 21.
[74] *Id.* at 22.
[75] *Id.* at 21; *see also* Rec. Docs. 128-5 at ¶¶ 20–21; 128-6 at ¶¶ 20–21
[76] Rec. Doc. 110-2 at ¶ 33.
[77] *Id.* at ¶¶ 10, 33.
[78] Rec. Doc. 128-3 at 22.

of the advertising and promotional materials,"[79] in the Olano Affidavit, Defendants contended that the Clubs "did not actively advertise."[80] The Company Defendants, however, also admitted that their investments included business infrastructure such as "music equipment and a performing stage."[81] Finally, Plaintiffs contend that the Clubs purchased alcohol to serve at the Clubs.[82]

Here, Plaintiffs' evidence indicates that Plaintiffs' investments were limited as to compared to the Clubs' investments. To be sure, the record does not completely identify the extent of the Clubs' investments. But as the Court explained in *Reich*, this fact is not dispositive "given the obvious significant investment" that Defendants have "in operating a nightclub."[83] As such, this Court finds that the second factor weighs in favor of finding that Plaintiffs are employees under the FLSA.

### c. Degree to which employee's opportunity for profit and loss is determined by the alleged employer

In *Reich*, the Fifth Circuit found that this factor was satisfied where the defendants exercised significant "control over determinants of customer volume."[84] The Court noted that "once customers arrive at [the defendants] nightclubs, a dancer's initiative, hustle, and costume significantly contribute to the amount of her tips. But [the defendants have] a significant role in drawing customers to its nightclubs."[85] This was so because the defendants

---

[79] Rec. Docs. 128-5 at ¶ 10; 128-6 at ¶ 11.
[80] Rec. Doc. 110-2 at ¶ 25.
[81] Rec. Doc. 128-3 at 21.
[82] Rec. Docs. 128-5 at ¶ 2; 128-6 at ¶ 2.
[83] *Reich*, 998 F.2d at 328.
[84] *Id.*
[85] *Id.*

were "responsible for advertisement, location, business hours, maintenance of facilities, aesthetics, and inventory of beverages and food."[86]

Here, Plaintiffs contend that Defendants are "in complete control over the Clubs' locations, the business hours, maintenance and cleanliness of the facilities, and the aesthetics of the club—all of which are designed to attract customers."[87] Plaintiffs also argue that Defendants "controlled who could enter the club at the door, but also in drawing customers to the club through marketing, promotional, and advertising efforts."[88]

In support, Plaintiffs point to statements in their affidavits that Defendants controlled the Clubs' "amenities and cleanliness," as well as the "overall atmosphere," by, *inter alia*, "setting the cover charges" and providing "the worksite, the stage, the lighting, the music and sound system," and poles.[89] Plaintiffs' affidavits also state that "Defendants' operations, management, and policies have been largely consistent across all their club locations."[90]

Here, Plaintiffs' evidence sufficiently shows that the Clubs had a significant role in drawing customers in. Indeed, just as in *Reich*, Plaintiffs have provided evidence indicating that the Clubs were responsible for the location, business hours, maintenance of facilities, aesthetics, and inventory of beverages and food.[91] And, regardless of whether the Clubs were actively advertising or not, they had control over the decision to do so. As such, the Court finds that the third factor weighs in favor of a finding that Plaintiffs are "employees" under the FLSA.

---

[86] *Id.* (citing Usery v. Pilgrim Equip. Co., 527 F.2d 1308, 1313 (5th Cir. 1976).
[87] Rec. Doc. 128-3 at 23.
[88] *Id.*
[89] Rec. Docs. 128-5 at ¶ 10; 128-6 at ¶ 11.
[90] Rec. Docs. 128-5 at ¶ 5; 128-6 at ¶ 5.
[91] *See, e.g.*, Rec. Docs. 128-5 at ¶¶ 2, 10; 128-6 at ¶ 2, 11.

### d. Skill and initiative

In evaluating this factor, the Court "considers whether plaintiffs have 'some unique skill set, or some ability to exercise significant initiative within the business.'"[92] "'Greater skill and more demonstrate initiative counsel in favor of [independent contractor] status.'"[93] As applied to exotic dancers, the Fifth Circuit in *Reich* concluded that this factor weighed in favor of a finding that the plaintiffs were employees because "[m]any of the dancers did not have any prior experience with topless dancing before coming to work for [the defendants]."[94] The Court noted that the dancers "do not need long training or highly developed skills to dance" for the defendants and that, "[a]s for the initiative exerted by the dancers, this court has concluded that the ability to develop and maintain rapport with customers is not the type of 'initiative' contemplated by this factor."[95] The *Reich* Court further held that the plaintiffs' "initiative is essentially limited to decisions involving her costumes and dance routines. The dancers do not exhibit the skill or initiative indicative of persons in business for themselves."[96]

Here, Plaintiffs' affidavits state that to be hired at the Clubs, "there is no education, skill, or dance experience or training necessary."[97] Plaintiffs also state that "[t]he dance skills required of an entertainer at [the Clubs] are similar to the skills that an ordinary person who is reasonably fit and coordinated would have."[98] In turn, the Olano Affidavit states that Defendants did not provide training and that the "dancers on their own trained if they

---

[92] *Johnson*, 588 F. Supp. at 745 (quoting *Hopkins*, 545 F.3d at 343).
[93] *Id.* (quoting Parrish v. Premier Directional Drilling, L.P., 917 F.3d 369, 385 (5th Cir. 2019)) (alterations in original).
[94] *Reich*, 998 F.2d at 328.
[95] *Id.*
[96] *Id.*
[97] Rec. Docs. 128-5 at ¶ 17; 128-6 at ¶ 17.
[98] Rec. Docs. 128-5 at ¶ 18; 128-6 at ¶ 18.

wanted to pole dance" and that the dancers "had their own skills at the time of coming to our clubs."[99]

Here, just as in *Reich*, the Court agrees that while Plaintiffs exhibited some skill, they "do not exhibit the skill or initiative indicative of persons in business for themselves."[100] As such, this factor weighs in favor of finding that Plaintiffs are employees under the FLSA.

### e. *Permanency of the relationship*

The fifth factor looks to the degree of permanency and duration of the working relationship.[101] In evaluating this factor, "the Fifth Circuit has provided several considerations, including (1) whether a plaintiff 'worked exclusively' for defendant, (2) the total length of relationship between the plaintiff and defendant, and (3) whether the work was on a 'project-by-project basis.'"[102] In *Reich*, the Fifth Circuit found that, assuming the defendant-club owners allowed the plaintiffs to "move from nightclub to nightclub," "the impermanent relationship between the dancers and [the defendants] indicates non-employee status."[103] The Court found, however, that this factor "was not determinative."[104]

Here, Plaintiffs point out that Defendants admitted that Plaintiffs worked for them for an indefinite and unfixed term.[105] Citing caselaw outside of this circuit, Plaintiffs argue that generally, where a plaintiff works for a defendant for more than a year, this signifies a high degree of permanence in

---

[99] Rec. Doc. 110-2 at ¶ 8.
[100] *Reich*, 998 F.2d at 328.
[101] *See id.*
[102] *Johnson*, 588 F. Supp. 3d at 746 (quoting *Parrish*, 917 F.3d at 387).
[103] *Reich*, 998 F.2d at 328 (citing McLaughlin v. Seafood Inc., 867 F.2d 875, 877 (5th Cir. 1989)).
[104] *Id.* (citing *McLaughlin*, 867 F.2d at 876–77).
[105] Rec. Doc. 128-3 at 25

the exotic dancing industry.[106] Plaintiffs also point to evidence that many Plaintiffs worked for Scores French Quarter, Scores West, and/or Stilettos for several years.[107] On the other hand, the Olano Affidavit states that Plaintiffs "could and did work at many clubs available to them on Bourbon St."[108]

In *Johnson*, the district court found that because certain plaintiffs had worked for several years for defendants, those plaintiffs appeared to have an "at-will" relationship; however, because there was "significant variation in each Plaintiff's tenure," and there was no evidence suggesting that Plaintiffs worked elsewhere, the district court ultimately held that this factor was neutral.[109] Here too, while many Plaintiffs did work for the Clubs for years, according to Plaintiffs, some worked at the Clubs for less than a year.[110] Moreover, the Olano Affidavit states that many Plaintiffs worked at other clubs, although it does not identify either specific Plaintiffs or specific clubs.[111] As such, it is unclear whether this factor weighs in favor of either party.

### f. Supplemental Factors—integral factor

Finally, Plaintiffs argue that the Court looks to the following supplemental factor: "the extent to which the service rendered (here, exotic dancing services) is an integral part of Defendants' business."[112] In *Johnson*, the district court considered Plaintiffs' evidence that the defendant-club's clientele primarily visited the clubs for the topless dancers; the defendants

---

[106] *Id.* (citing Clincy v. Galardi S. Ents., Inc., 808 F. Supp. 2d 1326, 1348 (N.D. Ga. 2011). In the *Clincy* case, the court also noted that other courts have found "that nude entertainers tend to be transient or itinerant." *Clincy,* 808 F. Supp. 2d at 1348.
[107] Rec. Doc. 128-3 at 25.
[108] Rec. Doc. 110-2 at ¶ 5. As the district court noted in *Johnson*, however, "whether the plaintiff 'could have' worked for other clubs is not a relevant concern, because the analysis is focused on economic reality, not hypotheticals." *Johnson*, 588 F. Supp. 3d at 746 (quoting *Parrish*, 917 F.3d at 387).
[109] *Johnson*, 588 F. Supp. 3d at 746–47.
[110] Rec. Doc. 128-3 at 26.
[111] Rec. Doc. 110-2 at ¶ 5.
[112] Rec. Doc. 128-3 at 26.

countered that the club's primary source of profit was a result of advertising for specials such as promoting television UFC fights at the club.[113]

Here, Plaintiffs contend that they "provide the adult entertainment services that Defendants sell to its customers. Without exotic dancers, Defendants would not be able to function."[114] A search of the record reveals no evidence to the contrary. Accordingly, the Court finds that this factor weighs in favor of finding that Plaintiffs are employees, as Plaintiffs "provide a service that is integral to Defendants' business."[115] Thus, the Court finds that under the five-factor analysis, Plaintiffs were employees within the meaning of the FLSA.

## 2. Whether Defendants Are Liable Under the FLSA

In their Motion, Plaintiffs seek to hold all Defendants liable as employers under the FLSA.[116] Plaintiffs also argue that that Defendants willfully violated the FLSA and that Plaintiffs are entitled to liquidated damages.[117]

Under the FLSA, any employer who violates the FLSA minimum wage statute, 29 U.S.C. § 206, or the FLSA maximum hours statute, 29 U.S.C. § 207, is "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."[118] The FLSA circularly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."[119] The FLSA's

---

[113] *Johnson*, 588 F. Supp. 3d at 747.
[114] *Id.*
[115] *See Johnson*, 588 F. Supp. 3d at 747.
[116] Rec. Doc. 128-3 at 2.
[117] *Id.* at 22.
[118] 29 U.S.C. § 216(b).
[119] *Reich*, 998 F.2d at 329 (quoting 29 U.S.C. § 203 (d)).

definition of employer must be liberally construed to effectuate Congress' remedial intent.[120]

"To determine whether an individual or entity is an employer, the court considers whether the alleged employer: '(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'"[121] "In cases where there may be more than one employer, this court 'must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test.'"[122]

Additionally, at the time this suit was filed, the FLSA provided that an individual can be employed by one employer or by more than one joint employer.[123] In joint employer contexts, each employer must meet the economic reality test.[124] Joint employers may be held jointly responsible to a shared employee under the FLSA.[125] Joint employer status is present when an employee is employed by the first employer, but simultaneously benefits

---

[120] *Id.* (citing Donovan v. Sabine Irrigation Co., Inc., 695 F.2d 190, 194 (5th Cir. 1983), *abrogated on other grounds by Reich v. Bay*, 23 F.3d at 117 n.4).

[121] Gray v. Powers, 673 F.3d 352, 355 (5th Cir. 2012) (quoting *Williams*, 595 F.3d at 620).

[122] *Id.* (quoting *Graves*, 909 F.2d at 1556).

[123] *See* Falk v. Brennan, 414 U.S. 190, 195 (1973); *see also Donovan*, 695 F.2d at 194.

[124] Orozco v. Plackis, 757 F.3d 445, 448 (5th Cir. 2014).

[125] *See* 29 C.F.R. § 791.2 (effective March 16, 2020 to October 4, 2021). There are two generally recognized categories of joint employment: "(1) vertical joint employment, 'when an employee of one employer (referred to ... as an intermediary employer) is also, with regard to the work performed for the intermediary employer, economically dependent on another employer,'" and "(2) horizontal joint employment, when 'two (or more) employers each separately employ an employee' but 'are sufficiently associated with or related to each other with respect to the employee.'" Savinova v. Nova Home Care, LLC, 3:20-cv-01612, 2024 WL 1344787, at *7 (D. Conn. Mar. 29, 2024) (quoting Murphy v. Heartshare Human Servs. of New York, 254 F. Supp. 3d 392, 396–97 (E.D. N.Y. 2017)). In their Complaint, Plaintiffs appear to invoke horizontal joint employment. *See* Rec. Doc. 42 at ¶ 20. Plaintiffs do not, however, make these arguments in their Motion.

another person by their work.[126] The other person or entity is only a joint employer if that person is acting directly or indirectly in the interest of the employer in relation to the employee.[127]

As to individuals, the FLSA's definition of employer is "sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees."[128] As such, an  individual qualifies as an employer if he 'independently exercised control over the work situation.'"[129] A "status-based inference of control," however, "cannot alone suffice to create a genuine fact issue whether [defendant] had power to hire and fire."[130]

Here, Plaintiffs do not distinguish between Defendants. Rather, Plaintiffs assert in their affidavits that all Defendants "owned and/or operated" the Clubs. In their Motion, Plaintiffs generally contend that Defendants had the power to hire and fire, control work schedules, and determine the rate and method of payment.[131]

Based on the evidence in the record, it is unclear whether each Defendant is an "employer" under the FLSA. As to the Company Defendants, the Olano Affidavit, which was filed on behalf of all Defendants by the

---

[126] 29 C.F.R. § 791.2(a)(1). This Rule was revoked in 2021. *See* 29 C.F.R. § 791.2 (reserved by DOL, Recission of Joint Employer Status under the FLSA Rule, 86 F.R. 40939-01, 2021 WL 3207510 (July 30, 2021)). Generally, the court applies the law in place at the time the conduct occurred. *See* Landgraf v. USI Film Prods., 511 U.S. 244, 266 (1994). But regardless of which law applies, in revoking the Rule, the DOL stated that "it did not reconsider the substance of its longstanding horizontal joint employer analysis" which will "continue to be . . . as it was[.]" 86 F.R. 40939-01, 2021 WL 3207510 (July 30, 2021).

[127] 29 C.F.R. § 791.2(a)(1).

[128] *Reich*, 998 F.2d at 329 (citing *Sabine*, 695 F.2d at 194–95, *abrogated on other grounds as recognized by Reich*, 23 F.3d at 117 n.4).

[129] *Id.* (quoting *Donovan*, 747 F.2d at 972).

[130] Heath v. TFS Dining, LLC, No. A-20-CV-00890, 2022 WL 827654, at *5 (W.D. Tex. Mar. 18, 2022) (quoting Gray v. Powers, 673 F.3d 352, 356 (5th Cir. 2012)) (alterations in original).

[131] Rec. Doc. 128-6 at ¶ 2.

"compliance controller" of the Clubs references just one company: "[o]ur company had the power to hire and fire dancers."[132] On the other hand, Plaintiffs' affidavits state only that "Stiletto's, Scores French Quarter, and Scores West alone had authority to hire and fire exotic dancers like me."[133] Moreover, the Company Defendants' admissions, referenced above and relied upon by Plaintiffs, were all identical and apparently reference only Famous Bourbon's ability to, for example, hire and fire.[134]

It is even less clear whether the Individual Defendants are "employers" within the meaning of the FLSA. Aside from Plaintiffs' general assertions in their affidavits, the only relevant evidence to which Plaintiffs point is the Individual Defendants' admission that each Individual Defendant "and the Clubs required each Plaintiff to complete an employee application."[135] The rest of the admissions as to the Individual Defendants do not appear to concern each Defendant's specific role or whether they had the ability to hire and fire, supervise, determine the rate of payment, etc.[136]

As this Court has explained, it is Plaintiffs' burden to prove "status . . . for *each* individual entity or person that he intends to pursue as an FLSA 'employer.'"[137] "Merely characterizing the defendants collectively as a 'single

---

[132] Rec. Doc. 110-2 at ¶ 34.

[133] Rec. Doc. 128-6 at ¶ 17. The Complaint and admissions thereto indicate that the Company Defendants appear to be doing business as the Clubs: Manhattan Fashion, LLC d/b/a Scores West ("Manhattan Fashion"); Silver Bourbon, Inc. d/b/a Scores French Quarter ("Silver Bourbon"); Temptations, Inc. d/b/a Stiletto's Cabaret ("Temptations"). Plaintiffs do not argue that these three Defendants, which have different addresses listed in both Complaints, are the Clubs referenced in its Motion and affidavits.

[134] Rec. Docs. 72-4, 72-5.

[135] Rec. Doc. 78-8 at 24 (Request for Admission No. 12 to Individual Defendants); *see also* Rec. Doc. 128-3 at 12 n.4).

[136] In their Complaints, Plaintiffs make several allegations as to the Individual Defendants' ownership and financial interests in the Corporate Defendants, as well as the Individual Defendants' managerial and operational roles. Those allegations differ between the Clifton and Kikuchi Complaints. *See* Rec. Docs. 9 (Clifton), 45 (Kikuchi).

[137] Mejia v. Travis Buquet Const., No. 17-3494, 2017 WL 2812937, at *2 (E.D. La. June 29, 2017) (Zainey, J.) (citing *Watson*, 909 F.2d at 1553).

business enterprise' will not suffice once Plaintiff has had the opportunity to conduct discovery on the 'employer' issue."[138] Indeed, courts have "found that fact issues precluded summary judgment on the issue of employer status where the 'extent to which [defendants] supervised workers, set compensation, or had hiring and firing authority [wa]s unclear.'"[139] Here too, this Court finds that Plaintiffs have failed to show an absence of genuine issue of material fact that Defendants are "employers" under the FLSA.[140]

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (Rec. Doc. 128) is **GRANTED IN PART** and **DENIED IN PART.**

New Orleans, Louisiana this 14th day of January, 2025.

**HON. JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[138] *Gray*, 673 F.3d at 355.

[139] *Heath*, 2022 WL 827654, at *6 (citing Solis v. UPM, Inc., No. H-08-1517, 2009 WL 4043362, at *6–7 (S.D. Tex. Nov. 19, 2009); Osborn v. Computer Sci. Corp., No. A-04-CA-158, 2005 WL 5878602, at *2 (W.D. Tex. 2005)).

[140] Plaintiffs also argue that "[a] two-year statute of limitations applies to FLSA actions unless the defendant's violation was willful, in which case the statute of limitations is extended to three years." Rec. Doc. 128-3 at 28 (citing 29 U.S.C. § 255). To show that the three-year statute of limitations applies, Plaintiffs "'bear the burden of establishing a defendant's willfulness.'" Alvarez v. NES Global LLC, 709 F. Supp. 3d 284, 300 (S.D. Tex. Dec. 29, 2023) (quoting *Dacar*, 914 F.3d at 926). Here, Plaintiffs conclusively argue that Defendants' failure to comply with the FLSA was willful. As such, the Court finds that to the extent that Plaintiffs request that the Court apply a three-year statute of limitations, such a request is denied.